Filed 11/10/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Marriage of DAWNEL and FRANK BONVINO. | B258376 |
| | (Los Angeles County Super. Ct. No. BD433136) |
| DAWNEL E. STOLTEBEN BONVINO, Respondent, v. FRANK BONVINO, Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Donna F. Goldstein and Randal F. Pacheco, Judges. Reversed in part and affirmed in part.

Law Office of Jeanne Collachia and Jeanne Collachia for Appellant.

Matthew R. Bogosian for Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts D-F of the Discussion.

A family home in Westlake Village was purchased during marriage with a downpayment from husband's separate property funds and the proceeds of a loan in husband's name. Title to the property was taken in husband's name, as a married man, as his sole and separate property. Approximately 15 months later, husband completed the sale of a separate property home he owned prior to marriage and used the proceeds to retire the loan on the new home. Wife moved out several years later. In dissolution proceedings, the trial court found the Westlake Village home was community property. The court awarded reimbursement of husband's separate property contributions under Family Code section 2640.[1] The court also charged husband for the fair market rental value of the home from the time wife moved out to the date of judgment.

On appeal, husband contends there is no evidence that he transmuted his separate property to community property. Instead, he asserts the trial court should have found both separate and community property interests were established in the Westlake Village home proportionate to the respective contributions to the equity in the property. In the published portion of the opinion, we hold that if property is acquired during marriage with both separate and community funds, the transmutation requirements of section 852 must be satisfied before the reimbursement provisions of section 2640 apply. The documents in this case do not contain an express transmutation of husband's separate property, and therefore, husband's separate property contributions remained husband's separate property. He held a separate property interest in the property proportionate to the separate property funds that he contributed.

In the unpublished portion of the opinion, we address husband's contentions that wife's quitclaim deed should not have been set aside for undue influence, he should not be charged for the rental value of the property unless the court has ordered exclusive use of the property to one spouse, the rental value of the property should have been offset by husband's separate property payments to maintain the property, and sanctions should

---

[1] All further statutory references are to the Family Code, unless otherwise specified.

2

have been issued in the amount of husband's attorney fees for wife's excessive litigation of claims to husband's separate property. We conclude substantial evidence supported setting aside the quitclaim deed. The amount charged based on the rental value of the property must be recalculated to reflect the community's proportionate interest in the property. The denial of attorney fees as sanctions was within the trial court's discretion.

We reverse the portion of the judgment concerning the ownership and division of Westlake Village property and the charges for the rental value of the property, and remand to the trial court for further proceedings in accordance with this opinion.

## FACTS[2]

Appellant Frank Bonvino (husband) obtained a real estate broker's license in 1983, but never worked as a real estate agent or broker. He began working in 1986 as a sales representative for Hill-Rom, which is a provider of medical products. He purchased a home in Long Beach, California, and paid off the mortgage prior to marriage. He also purchased a duplex with his brother and owned certain bank accounts. Husband used the services of a real estate agent or broker in real estate transactions.

Husband married Dawnel E. Stolteben Bonvino (wife) on October 2, 1993. He stopped making contributions to his retirement plans at Hill-Rom as of the marriage date in order to keep his accumulated earnings in those plans as his separate property. The couple lived in husband's home in Long Beach. Wife worked as a medical supplies sales representative for another company. She believed that everything husband owned prior to marriage was owned jointly after marriage.

Husband's employment at Hill-Rom terminated in 1994. Hill-Rom distributed the funds from his retirement plans, which he invested in an account at Charles Schwab. No

---

[2] In accordance with the standard of review, the facts have been stated in the light most favorable to the judgment. (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 849.)

3

additional deposits were made to the Schwab account during the marriage.

Husband found another job in sales at COHR, Inc. in Chatsworth, California. Wife stopped working after their son was born in 1996. They decided to move to a neighborhood closer to husband's job and more suitable for raising a family. They found a property for sale in Westlake Village and planned to rent the Long Beach property to husband's friend. Before purchasing the Westlake Village property, they discussed that the Long Beach property would be sold to pay off the mortgage on the Westlake Village property. Husband's friend signed a year lease.

The purchase price for the Westlake Village property was $410,000. Husband made a downpayment of $90,212.50 from his Schwab account. Wife was aware the downpayment came from the Schwab account.

Husband applied for a loan in the amount of $328,000, which included $319,787.50 for the remainder of the purchase price and $8,212.50 for the loan's closing costs and prepaid items. The loan application stated the title to the Westlake Village property would be held in the name of Frank Bonvino, as "married sole and separate." He had been employed for two months. His gross monthly income was listed as $8,597, which included base employment income of $6,667, net rental income of $1,280, and a car allowance of $650. His liquid assets were stated as $12,000 in cash held by Michael Thomas Escrow, two accounts at Schwab valued at $80,000 and $110,000 respectively, and a 401k plan valued at $4,521. He also listed real estate valued at $325,000, and another asset valued at $50,000. The total value of liquid and nonliquid assets was $587,621. The deed of trust reflects that Chase Manhattan Mortgage Corporation made the loan of $328,000. Wife did not sign the loan or escrow documents.

On November 15, 1996, husband drove wife to a notary to sign a quitclaim deed for the Westlake Village property. Both husband and the notary told her that signing the quitclaim deed was a mere formality. Husband said she had bad credit and needed to sign the quitclaim deed for them to purchase the house. Wife was aware that she had

4

credit card debt. Husband assured wife that he would put her name on the title as soon as they closed escrow.

On December 11, 1996, a deed was recorded granting the Westlake Village property from the sellers to "FRANK A. BONVINO, a Married Man, as his sole and separate property." The amount of the downpayment and the loan proceeds totaled $418,212.50.

Wife trusted husband and always assumed the house was community property. They raised their children in the house and she made it a home. The fact that her name was not on the title and their intent to change title was discussed several times during the marriage.

The monthly mortgage payment of approximately $2,600 was paid from community funds. The Long Beach property sold approximately 15 months later. The escrow company sent the proceeds from the sale directly to the bank to retire the loan on the Westlake Village property. After the loan was paid off, husband and wife had an additional $2,600 per month to invest in community property retirement and education accounts. The parties had a second child in 1999.

## PROCEDURAL BACKGROUND

After approximately 12 years of marriage, wife filed a petition for dissolution of the marriage on September 16, 2005. In July 2006, the parties stipulated to bifurcate the characterization of the Westlake Village home and one other issue which was eventually withdrawn. In wife's trial brief, she argued that the Westlake Village residence was presumed to be community property under section 760 because it was acquired during marriage. The common law presumption based on the form of title under Evidence Code section 662 did not apply. The Westlake Village residence was community property because the proceeds of a loan during marriage are presumed to be community property unless there is evidence that the lender relied on separate property in extending credit.

5

The lender must have intended to rely on husband's community property income for repayment, because husband's employment income was listed on the loan application, and the other source of income listed was less than the amount of the mortgage payment. The quitclaim deed should be set aside as a product of undue influence, because wife did not have full knowledge of the facts, did not understand the legal effect of the transaction, no consideration was provided, and the transaction was not fair.

Husband argued in his trial brief that the Westlake Village property was his separate property, subject to a pro tanto community property interest under *Moore*/*Marsden*.[3] The downpayment for the Westlake Village property came from his separate property. The mortgage on the property was paid within two years with proceeds from the sale of his separate real property. Wife executed a quitclaim deed at the time the property was purchased, but any advantage to husband from the quitclaim deed was trivial because the community's interest was negligible.

Hearings were held on March 15, June 13, and August 16, 2007. The trial court issued a tentative decision on November 29, 2007, and a final statement of decision on the bifurcated issue on October 23, 2008. The trial court noted that husband owned substantial separate property. The Westlake Village property was purchased as the family's home. The downpayment of $89,000 came from husband's separate property. At the time of closing, a deed of trust in the amount of $328,000 was taken out based on husband's employment income of $6,667, net rental income of $1,280, and other income of $650, for a total income of $8,597. When the Long Beach property was sold 15 months later, the proceeds were husband's separate property. He used the separate property funds to retire the loan on the Westlake Village property.

The trial court made the following findings. The Westlake Village property was presumed to be community property because it was acquired during marriage. Wife testified that husband promised the property would be held jointly as community property

---

[3] *In re Marriage of Moore* (1980) 28 Cal.3d 366 (*Moore*); *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426.

6

and her name would be put on the title. She understood he was investing his separate property in the residence and the investment would remain separate. She denied any agreement that the home would be his separate property with no community interest. Husband's explanation to wife that the quitclaim deed was a means to keep his separate property separate was inadequate, because the law presumed the house was community property and provided for reimbursement of his separate property contribution to the purchase of the marital home under section 2640. Knowledge of this law was imputed to husband as a real estate broker, and he failed to meet his obligation to explain it to wife. The trial court found wife's testimony concerning the quitclaim deed was more credible and the presumption of undue influence had not been rebutted. With respect to the quitclaim deed, husband had not demonstrated the highest good faith and fair dealing as to wife. The court found husband failed to meet his burden to rebut the presumption the Westlake Village home was community property. The trial court also found husband had a claim under Family Code section 2640 for reimbursement of his separate property contributions to the purchase of the property. On June 8, 2009, the final statement of decision on the bifurcated issue became the order of the court.

On November 17, 2011, the parties stipulated that the duplex, a Schwab IRA in husband's name, and an IRA at Fidelity Investments in husband's name were husband's separate property. In January 2012, wife filed a trial brief on the valuation and division of the Westlake Village property, community reimbursement for the fair rental value of the Westlake Village property, and the ownership of accounts held by husband and his mother in New York.

On June 12, 2012, the trial court issued a tentative statement of decision. Pursuant to the parties' stipulations, in exchange for a payment of $5,000 to wife, the accounts in New York were husband's separate property. The court found the value of the Westlake Village property was $870,000. Husband was awarded reimbursement of $411,213.86 pursuant to section 2640 for the downpayment and loan payoff from his separate property. The court found the fair rental value was $3,400 per month from November 1,

7

2005, to the present. Husband owed the fair rental value of $268,000 to the community for his use of the property through the present.

Husband objected to several items, including the calculation of rental charges. Husband argued that the court failed to take into account his payment of property taxes of $40,720.72 and insurance payments of $7,627. On August 7, 2012, the court issued its final statement of decision on the reserved issues. On March 8, 2013, the trial court issued a tentative decision on attorney fees and costs. Two final judgments were entered on reserved issues on June 24, 2014. Husband filed a timely notice of appeal.

## DISCUSSION

### A. Applicable Standards of Review

The court's characterization of property as community or separate determines the division of the property between spouses in a marital dissolution proceeding. (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1399-1400 (*Valli*).) In general, "[a]ppellate review of a trial court's finding that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding. [Citations.]" (*In re Marriage of Dekker, supra,* 17 Cal.App.4th at p. 849.)

We review the interpretation of a statute and its application to undisputed facts de novo. (*MacIsaac v. Waste Management Collection and Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082.) "In interpreting the statutory language at issue, '[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent.' [Citation.] The process of interpreting the statute to ascertain that intent may involve up to three steps. [Citations.] As other courts have noted, the key to statutory interpretation is applying the rules of statutory construction in their proper sequence. [Citations.] We have explained this three-step sequence as follows: 'we first look to the

8

plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction.' [Citation.]" (*Id.* at p. 1082.)

"In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence. [Citations.] Under the circumstances, we are not bound by the interpretation given to the written instruments by the trial court. [Citation.]" (*In re Marriage of Starkman* (2005) 129 Cal.App.4th 659, 664.)

## B. Characterization of Westlake Village Home

Husband contends separate and community property interests were established in the Westlake Village home in proportion to the separate and community contributions to equity. Wife contends husband is simply entitled to reimbursement of his separate property contributions, without interest or appreciation, in accordance with the provisions of section 2640. We conclude the trial court's finding that the Westlake Village home is community property is not supported by substantial evidence. The evidence shows the home was purchased with a downpayment from husband's separate property and loan proceeds attributable to the community. Husband did not sign an express written declaration transmuting his separate property to community property as required to change the character of the property under section 852. Therefore, his contribution to the purchase of the Westlake Village home maintained its separate property character and did not become community property. The requirements of the transmutation statute must be met before the reimbursement provisions of section 2640 apply. We agree that there are both separate and community property interests in the Westlake Village home in proportion to the equity contributions.

9

## 1. General Community Property Presumption Overcome by Tracing

"The character of property as separate or community is determined at the time of its acquisition. [Citations.]" (*See v. See* (1966) 64 Cal.2d 778, 783.) "Property that a spouse acquired before the marriage is that spouse's separate property. (Fam. Code, § 770, subd. (a)(1).) Property that a spouse acquired during the marriage is community property (*id.,* § 760) unless it is (1) traceable to a separate property source [citations], (2) acquired by gift or bequest (Fam. Code, § 770, subd. (a)(2)), or (3) earned or accumulated while the spouses are living separate and apart (*id.,* § 771, subd. (a))." (*Valli, supra,* 58 Cal.4th at p. 1400.)

Virtually any credible evidence may be used to overcome the general community property presumption, including tracing to a separate property source. (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 290 (*Haines*), disapproved on another point in *Valli, supra*, 58 Cal.4th at p. 1404.) "[W]here there is no written indication of ownership interests between the spouses, the general presumption of community property may be overcome simply by tracing the source of the funds used to acquire the property to separate property. [Citations.]" (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 (*Lucas*).)

Property that a spouse purchases with separate property funds continues to be separate property. (*Thomasset v. Thomasset* (1953) 122 Cal.App.2d 116, 123.) Separate property does not change character simply because the owner is married, or the property is used in the marital relationship, or the property changes form or identity. (*Id*. at p. 124.) Property that is separate at the time of acquisition remains separate, except for any increase in value due to community efforts or contributions. (*Id*. at p. 123.) "Commingling of separate and community property does not alter the status of the separate property interest so long as it can be traced to its separate property source. [Citation.]" (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1057.)

Payment for the Westlake Village property was traced to both separate and community funds. Husband used his separate property funds for the downpayment. The remainder of the purchase price was paid with loan proceeds. The trial court impliedly found the lender intended to rely on community property and the loan proceeds were community property. The character of property acquired on credit is determined by whether the lender intended to rely on separate or community property. (*In re Marriage of Grinius* (1985) 166 Cal.App.3d 1179, 1186.) Loan proceeds acquired during marriage are presumed to be community property. (*Id.* at p. 1187.) This presumption can be rebutted by showing the lender intended to rely on the spouse's separate property alone. (*Ibid.*) Loan proceeds secured by separate property are also separate property. (*Bank of California v. Connolly* (1973) 36 Cal.App.3d 350, 375.) However, the proceeds of a loan made on a spouse's personal credit are considered community property. (*Ibid.*) "Without satisfactory evidence of the lender's intent, the general presumption prevails." (*In re Marriage of Grinius, supra,* at p. 1187.)

Husband did not request a finding, or object to the statement of decision for lack of a finding, on the lender's intent to rely on community property or the character of the loan proceeds. If a party fails to raise omissions or ambiguities in the trial court, the appellate court will infer the trial court made all factual findings necessary to support the judgment. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60.) Substantial evidence supports the implied finding that the loan proceeds were community property, because husband's salary is the primary source of income listed on the loan application. It was husband's burden at trial to rebut the presumption that the loan proceeds were community property, and he failed to establish that the lender intended to rely solely on his separate property in making the loan. Therefore, the source of the payments to acquire the Westlake Village home was properly traced to both separate and community contributions. As will be shown, in the absence of a valid transmutation under section 852, the separate and community contributions to the purchase of the Westlake Village home maintained their character.

11

## 2. Agreements to Alter Character of Property – Prior View Based on Form of Title

Spouses can agree to alter the character of their property (*Haines*, *supra*, 33 Cal.App.4th at p. 291), but the evidence required to prove their agreement has changed over time (*In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 484). Under early case law, the form of title was evidence of the parties' agreement and raised a presumption that the ownership of property was as shown in the title document. (*Lucas*, *supra*, 27 Cal.3d at p. 813; see, e.g., *Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 212; *Siberell v. Siberell* (1932) 214 Cal. 767, 772.) The form of title was not conclusive. (*In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 455 (*Aufmuth*).) It could be overcome by evidence of an oral agreement or understanding that ownership was actually held in another form, but it could not be rebutted simply by tracing the source of the funds for the purchase. (*Lucas*, *supra*, at p. 813.)

In 1965, this presumption was codified in Evidence Code section 662 as follows: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." (*Haines*, *supra*, 33 Cal.App.4th at p. 294.) That same year, the Legislature added a presumption to former Civil Code section 164 that a single family residence acquired by a husband and wife during marriage in joint tenancy is community property for the purposes of the division of property at divorce. (*Lucas, supra,* 27 Cal.3d at p. 814.) The presumption in Civil Code section 164 was later replaced with a nearly identical joint title presumption in former Civil Code section 5110. (*Id.* at p. 814, fn. 2.)

The Supreme Court applied the presumptions arising from the form of title in *Lucas, supra,* 27 Cal.3d 808. In *Lucas,* a home was purchased during marriage and title was taken in joint tenancy. (*Id.* at p. 811.) The wife used her separate property for the downpayment, and the couple assumed a loan for the remainder of the purchase price.

12

Appellate decisions conflicted about whether an agreement between the parties was necessary to maintain a separate property interest in a home purchased during marriage in joint title. (*Id.* at pp. 812-813.)

The *Lucas* court began its analysis with the form of title. (*Lucas, supra,* 27 Cal.3d at p. 813.) Under former Civil Code section 5110, a single family residence held in joint tenancy was presumed to be community property at dissolution. As a result of the express designation of ownership in the title document, a greater showing was required to rebut the presumption than merely tracing the source of the funds. (*Id.* at pp. 814-815.) The *Lucas* court held that when parties have specified a joint form of title, the spouse claiming a separate property interest needs to show an agreement or understanding that the separate property contributions will remain separate. (*Ibid.*)

The *Lucas* court reasoned that the noncontributing spouse needs to be aware of the expectation of reimbursement to have an opportunity to obtain alternate financing to preserve the joint ownership of the property. (*Lucas, supra,* 27 Cal.3d at p. 815.) "The act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest. Accordingly, the expectations of parties who take title jointly are best protected by presuming that the specified ownership interest is intended in the absence of an agreement or understanding to the contrary." (*Ibid.*)

The *Lucas* court noted that a spouse who uses separate property for community purposes during marriage is presumed to have intended a gift to the community. (*Lucas, supra,* 27 Cal.3d at p. 816 [citing case law about the use of separate property for community expenses, not for assets existing at dissolution].) A contributing spouse is entitled to reimbursement only if the parties have an agreement providing for reimbursement. (*Ibid.*) "The absence of a statutory right to reimbursement together with basic equity considerations led us to conclude that the husband acts with a donative intent that transmutes his separate property into community property. [Citation.]" (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 83, fn. omitted.)

13

The *Lucas* court remanded the case for reconsideration in light of the court's opinion. (*Lucas, supra,* 27 Cal.3d at p. 816.) If the trial court found no agreement that the wife would retain a separate property interest, then the wife would not be entitled to any reimbursement of her separate property contribution. (*Ibid.*) If the trial court found there was an understanding or agreement that the wife would retain a separate property interest in the residence, the *Lucas* court approved the formula set forth in *Aufmuth* for calculating the community and separate property interests in the property. (*Ibid.*)

The *Aufmuth* court calculated the separate and community interests in a property purchased during marriage on a pro rata basis in proportion to the separate and community funds invested in the property. (*Aufmuth*, *supra*, 89 Cal.App.3d at p. 457.) The wife's separate property share was the amount of equity paid from her separate funds plus the amount of capital appreciation attributable to her separate funds, while the community's share was the amount of equity paid by community funds added to the amount of capital appreciation attributable to community funds. (*Ibid.*) Amounts that did not increase the equity in the property, including taxes, maintenance and insurance, were not included. (*Ibid.*)

The *Lucas* court applied the same presumptions to determine the ownership of a motor home as well. The couple had traded in a community property vehicle during marriage toward the purchase of a family motor home. (*Lucas, supra,* 27 Cal.3d at p. 817.) The wife used her separate property for the balance of the purchase price. Title was taken in the wife's name alone, without any objection by the husband. The *Lucas* court concluded the husband made a gift of his community property interest in the motor home to the wife, because title to the motor home was taken in the wife's name alone, the husband was aware of it, and he did not object. (*Id.* at p. 818.)

### 3. Community Contributions to Property Acquired Before Marriage

A few months after deciding *Lucas*, in *Moore, supra,* 28 Cal.3d 366, the Supreme

Court found both separate and community property interests were established in property acquired before marriage in one spouse's name and purchased with both separate and community funds. The Supreme Court calculated the community's share of the property based on the formula in *Aufmuth* that was approved in *Lucas*. (*Id.* at p. 373.) The wife had purchased a house before marriage, took title in her name as a single woman, and made some of the loan payments. During marriage, the parties made loan payments with community funds. (*Id.* at p. 370.) The *Moore* court held that upon dissolution, the community shared title to the property in proportion to the amount contributed to the purchase price. (*Id.* at p. 371.) To calculate the separate property share, the separate property contributions (the downpayment and the loan proceeds, minus the amount by which community funds reduced the principal balance of loan) are divided by the purchase price. (*Id.* at p. 373.) The separate property percentage is multiplied by the property's total appreciation during marriage to determine the capital appreciation attributable to the separate funds. (*Ibid.*) The separate property share is the equity paid from separate property plus the appreciation attributable to separate property. (*Ibid.*) To determine the community property share, the amount that community funds reduced the principal is divided by the purchase price. (*Id.* at pp. 373-374.) The community property percentage is multiplied by the total appreciation of the property during marriage to calculate the community's share of appreciation. (*Ibid.*) The community's share is the equity paid by community funds and the appreciation attributable to community funds. (*Id.* at p. 374.) Amounts that do not increase the equity value of the property, including interest, taxes and insurance, are not included in the calculation of the parties' interests in the property. (*Id.* at p. 372.)

The appellate court in *In re Marriage of Stoner* (1983) 147 Cal.App.3d 858 (*Stoner*) purported to apply *Moore* to facts similar to the instant case. The Stoners lived in the wife's separate property home in Ohio prior to marriage. (*Id.* at p. 860.) Shortly after marriage, the couple relocated to California for wife's career. (*Id.* at p. 861.) The wife paid for a new home with a downpayment from her separate property funds and a

15

loan in her name. Title was taken in the wife's name as a married woman and as her separate property. The husband executed a quitclaim deed. At trial, he testified that he had poor credit and thought title had to be in the wife's name to obtain financing. He was aware title would be in the wife's name alone, but said they agreed title would be transferred into both names once they moved into the house. (*Ibid.*) The trial court, however, found no agreements existed between the parties. (*Id.* at pp. 861-862.) The *Stoner* court concluded that the loan was community property and the loan payments were made with community funds. (*Id.* at p. 862.) As a result, the community had a pro tanto interest in the property under *Moore*. (*Id.* at p. 864.) The *Stoner* court proceeded to find the husband transmuted his community interest through the quitclaim deed and the use of community funds for loan payments was a gift (*ibid*), a conclusion which was soundly criticized by *In re Marriage of Branco* (1996) 47 Cal.App.4th 1621, 1627-1629, as contrary to the controlling law set forth in *Moore*.

### 4. Statutory Scheme Enacted in Response to *Lucas*

The Legislature enacted several statutes in response to *Lucas*, including provisions governing the transmutation of property, ownership of jointly titled property, and reimbursement of the contributions to acquire property.

#### a. Transmutation Requirements

In 1984, the California Law Revision Commission (the Commission) reported that under existing law, it was easy for spouses to transmute real or personal property based on oral statements or conduct, which reflected the informality of interspousal transfers, but "generated extensive litigation in dissolution proceedings. It encourages a spouse, after the marriage has ended, to transform a passing comment into an 'agreement' or even to commit perjury by manufacturing an oral or implied transmutation."

16

(Recommendation Relating to Marital Property Presumptions and Transmutations, 17 Cal. Law Revision Com. Rep. (1984) (Commission report) p. 214.)

To solve the problem of unreliable evidence in transmutation cases, the Legislature adopted the transmutation requirements of former Civil Code sections 5110.710 through 5110.740, now Family Code sections 850 through 853. (*Estate of MacDonald* (1990) 51 Cal.3d 262, 267-269; *Valli, supra,* 58 Cal.4th at pp. 1400-1401.) Section 852 provides: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (§ 852, subd. (a).) A married person may transmute the character of property from separate to community or from community to separate by agreement or transfer, with or without consideration, but the transmutation must meet the statutory requirements to be valid. (*Haines, supra,* 33 Cal.App.4th at p. 293; § 850.)

The statute requires formalities to increase certainty that a transmutation occurred. (Commission report, *supra,* at pp. 224-225.) "To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed. (*Estate of MacDonald*[*, supra,*] 51 Cal.3d [at p.] 272.)" (*Valli*, *supra*, 58 Cal.4th at p. 1400.) "An 'express declaration' does not require use of the terms 'transmutation,' 'community property,' 'separate property,' or a particular locution. [Citation.]" (*In re Marriage of Starkman, supra,* 129 Cal.App.4th at p. 664.) "Though no particular terminology is required [citation], the writing must reflect a transmutation on its face, and must eliminate the need to consider other evidence in divining this intent. [Citation.]" (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1106-1107.) "The express declaration must unambiguously indicate a change in character or ownership of property. [Citation.] A party does not 'slip into a transmutation by accident.' [Citation.]" (*In re Marriage of Starkman, supra,* at p. 664.)

17

The transmutation statute applies to property transactions between spouses, as well as to property purchased from third parties. (*Valli, supra,* 58 Cal.4th at pp. 1404-1406.) It does not apply to a gift between spouses of personal items that are used primarily by the recipient and are "not substantial in value taking into account the circumstances of the marriage." (§ 852, subd. (c).)

Courts have adhered closely to these requirements and declined to find a valid transmutation without a clear understanding in writing that the document changes the character or ownership of specific property. (*In re Marriage of Starkman, supra,* 129 Cal.App.4th at pp. 663-665 [trust language stating any property transferred to the trust was community property unless identified as separate property did not unambiguously establish spouse was effecting a change of ownership of separate property]; *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 589-590 [written instructions to "transfer" stock to spouse's name, and form stating the undersigned hereby sells, assigns and transfers unspecified shares of stock to spouse, did not expressly state the characterization or ownership of the property was being changed]; *Estate of Bibb* (2001) 87 Cal.App.4th 461, 468-470 [registration of separate property automobile in the name of husband "or" wife was not a valid transmutation, because DMV printout was not signed by adversely affected spouse and did not contain clear and unambiguous expression of intent to change character, but deed granting property from husband to husband and wife as joint tenants was a valid transmutation, because it was signed by the adversely affected spouse and "grant" is the word historically used to transfer an interest in real property]; *In re Marriage of Leni* (2006) 144 Cal.App.4th 1087, 1096 [escrow instructions to split proceeds from sale of community property "50/50" did not satisfy transmutation requirements, because there was no express declaration that the character of the property was being changed]; compare *In re Marriage of Holtemann* (2008) 166 Cal.App.4th 1166, 1172-1173 ["Transmutation Agreement" stating character of listed property was transmuted from husband's separate property to community property of both spouses was a valid transmutation]; *In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 51-52

18

[agreement stating husband's separate property "*is hereby converted to community property* of Husband and Wife" was a valid transmutation].)

To show an agreement changing the character of property from separate to community, or community to separate, the requirements of the transmutation statutes must be met. If the form of title to property changes the character of the property without meeting the requirements of section 852, then the title presumption of Evidence Code section 662 does not apply. (*Valli*, *supra*, 58 Cal.4th at p. 1406.)[4]

In this case, the Westlake Village property was acquired with both separate and community funds, and title was taken in husband's name as his separate property. Husband did not sign any writing containing an express declaration that he was changing the character of his separate property. In fact, every document that husband signed reflected an intent to maintain the separate character of the property. Husband's use of his separate property in the acquisition of the Westlake Village home did not meet the statutory requirements of section 852 to change the character of his separate property.

We note the presumption of Evidence Code section 662 based on the form of title does not apply in this case, because it conflicts with the transmutation requirements. The loan proceeds used to purchase the property were found to be community property. The transmutation requirements had to be met for the character of property purchased with community loan proceeds to become husband's separate property as stated in the conveyance of title. Wife did not sign any of documents conveying title to husband other than the quitclaim deed that was set aside. Once the quitclaim deed was set aside, none of the remaining documents in the case satisfied the statutory requirements to transmute wife's community property interest in the Westlake Village property to husband's separate property. Because the presumption based on the form of title conflicts with the transmutation requirements in this case, the form of title presumption does not apply.

---

[4] Justice Chin, in a persuasive concurrence joined by Justices Corrigan and Liu, stated courts should apply the Family Code statutes to characterize property acquired during marriage and not the presumption of Evidence Code section 662 based on the form of title. (*Valli*, *supra*, 58 Cal.4th pp.1413-1414 (conc. opn. of Chin, J.).)

### b. Joint Title Presumption of Family Code Section 2581

The Legislature also changed the rule that a spouse could rebut the presumption of community property for a joint tenancy residence with evidence of an oral agreement that it was separate property. (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) foll. § 2580, pp. 90-91.) In 1983, the Legislature enacted former Civil Code section 4800.1, now section 2581, which expanded the joint title presumption of Civil Code section 5110 for single family residences to all property acquired during marriage in joint form. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 761-762.) Under section 2581, property acquired in joint title during marriage is presumed to be community property upon dissolution.[5] The presumption of section 2581 may be rebutted only by a clear statement in the title document or proof of a written agreement that the property is separate and not community property. (§ 2581.) "The requirement of a writing provides a reliable test by which to determine the understanding of the parties. It seeks to prevent the abuses and unpredictability that have resulted from the oral agreement standard." (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) foll. § 2580, p. 91.)

This appellate court recently held the requirements of section 852 must be met to transmute separate property to joint title before the joint title presumption of section 2581

---

[5] Section 2581 currently provides: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

applies. (*In re Marriage of Lafkas* (2015) 237 Cal.App.4th 921, 926.)

### c. Reimbursement

The *Lucas* court's holding that separate funds used to acquire a community asset were a gift to the community unless the party could prove an agreement otherwise "was widely considered to cause injustice to persons who contributed their separate funds for use by the community and then lost the funds entirely to the community at dissolution of marriage. Often the parties were unaware that taking title in joint tenancy had the effect of making a gift of the separate property to the community." (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) foll. § 2580, p. 91.)

In 1983, the Legislature adopted the statutory reimbursement provisions of former Civil Code section 4800.2, now section 2640. Section 2640 provides a limited reimbursement of separate property contributions as part of the division of the community estate under the Family Code.[6] Contributions to the acquisition of

---

[6] Section 2640 currently provides: "(a) 'Contributions to the acquisition of property,' as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property. [¶] (b) In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division. [¶] (c) A party shall be reimbursed for the party's separate property contributions to the acquisition of property of the other spouse's separate property estate during the marriage, unless there has been a transmutation in writing pursuant to Chapter 5 (commencing with Section 850) of Part 2 of Division 4, or a written waiver of the right to reimbursement. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."

21

community property are reimbursed to the extent a party traces the contributions to a separate property source, unless the party waived the reimbursement right in writing or signed a writing that has the effect of a waiver. (§ 2640, subd. (b).) The amount reimbursed does not include interest or appreciation, and cannot exceed the net value of the property at the time of division. (*Ibid.*)

"Contributions" include funds used for downpayments, improvements and the reduction of the principal of a loan that financed the purchase or improvement of the property. (§ 2640, subd. (a).) Contributions do not include the interest paid on the loan or payments for maintenance, insurance, or taxes. (*Ibid.*)

"Under Section 2640, in case of dissolution of the marriage, a party making a separate property contribution to the acquisition of the property is not presumed to have made a gift, unless it is shown that the parties agreed in writing that it was a gift, but is entitled to reimbursement for the separate property contribution at dissolution of marriage. The separate property contribution is measured by the value of the contribution at the time the contribution is made. Under this rule, if the property has since appreciated in value, the community is entitled to the appreciation. If the property has since depreciated in value, reimbursement may not exceed the value of the property; if both parties are entitled to reimbursement and the property has insufficient value to permit full reimbursement of both, reimbursement should be on a proportionate basis." (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) foll. § 2640, pp. 136-137.)

The Commission noted that the joint title and reimbursement provisions also govern a spouse's separate property when title to the property is taken in joint form during the marriage. (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) foll. § 2581, p. 92.) "The measure of the separate property contribution under Section 2640 in such a case is the value of the property at the time of its conversion to joint or community property form." (*Ibid.*)

In 2004, the Legislature added subdivision (c) to section 2640 in 2004, which provides for reimbursement of a party's separate property contributions to the acquisition

of the other spouse's separate property during marriage, unless there has been a transmutation in writing or a written waiver of the right to reimbursement. (Stats. 2004, ch. 119, § 1.)

### 5. Priority of Family Code Section 852

We conclude that the transmutation provisions of section 852 must be satisfied to change the character of separate property to community property before the reimbursement provisions of section 2640 apply.

"It is a fundamental rule of statutory construction that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.]" (*Estate of MacDonald, supra,* 51 Cal.3d at p. 268.) """We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."' [Citation.]" (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 918.) Canons of statutory construction may assist in determining legislative intent, including "the duty to harmonize statutes on the same subject if possible, the presumption against implied repeals, and the rule that a specific statute prevails over a general one." (*Medical Bd. of California v. Superior Court* (2001) 88 Cal.App.4th 1001, 1013, fns. omitted.)

By the plain language of the statute, section 2640 applies to contributions to the acquisition of community property. In other words, it applies to separate property contributions that are traceable from a community property asset at dissolution. Section 2640 does not purport to apply to separate property used during marriage to acquire an asset that retains its character as separate property. In order for section 2640 to apply, the asset purchased during marriage must be characterized as community property, and in

23

order for separate property to become community property, the transmutation provisions must be satisfied.

In *Valli*, the Supreme Court explained the rationale for applying the transmutation statutes over the presumption of Evidence Code section 662 based on the form of title. (*Valli*, *supra*, 58 Cal.4th at p. 1406.) The court's reasoning applies equally to requiring compliance with the transmutation statutes before applying the reimbursement statute. The purpose of the transmutation statutes is to reduce excessive litigation, unreliable evidence, and incentives for perjury in dissolution actions concerning the characterization of property. (*Id.* at p. 1405.) Whether property was purchased from a third party or transferred between spouses, the parties could present contradictory testimony in a dissolution proceeding about their understanding of the character of the property. (*Id.* at p. 1402.) "If the transmutation statutes did not apply, and in the absence of a writing expressly memorializing the parties' understanding and intent, the trial court in the dissolution proceeding would be obliged to base its decision regarding the [character of the property] as community or separate property on a difficult assessment of the spouses' credibility as witnesses. [Citation.] Putting the trial court in such a position is what the transmutation statutes were enacted to prevent." (*Id.* at pp. 1402-1403.)

Interpreting the statutory scheme to require compliance with the transmutation requirements, where applicable, before the reimbursement provisions apply is consistent with the legislative intent of the statutes. Section 852 states that a transmutation of separate property is not valid unless made in an express declaration in writing. Both sections 852 and 2640 were enacted, at least in part, to prevent spouses from making unintentional gifts of property and to avoid reliance on credibility determinations about oral agreements between spouses. Other than the fact that the Westlake Village property was purchased during the parties' marriage, the only evidence it was community property was wife's testimony about an oral agreement to add her to the title, which is precisely the type of credibility determination that the post-*Lucas* statutes were enacted to prevent. Our construction of the statutory scheme avoids the absurd consequence of finding

24

proportionate separate and community interests in one case, or simple reimbursement of separate property without interest or appreciation in another, based on the same contributions to the acquisition of property purchased during marriage.

None of the documents in this case satisfied the requirements of section 852 to effect a valid transmutation of husband's separate property interest in the Westlake Village property to community property. Husband's traceable separate property investment retained its separate property character, and both separate and community property interests were established in the property in accordance with the formula established in *Aufmuth* and *Moore*.

## C.  Loan Pay Off

Husband's payoff of the outstanding loan on the Westlake Village property also did not meet the requirements of section 852 to transmute his separate property interest to community property with a right of reimbursement. Husband paid off a loan in his name alone that was secured by property held in his name as his separate property. The trial court found wife was aware that husband used his separate property to pay off the loan and intended to keep his separate property interest separate. Wife agreed with husband's financial decision to pay off the loan with his separate property in exchange for increasing their investment of community income in retirement and education accounts. The evidence showed the community in fact invested substantial monthly sums in such accounts. Husband's payment of the outstanding loan with his separate property created an additional proportionate separate property investment in the property.

On remand, the trial court must calculate the separate and community interests in the Westlake Village property. We note that the amount of the loan taken out to purchase the Westlake Village property was $328,000, which included closing costs and prepaid items of $8,212.50. The separate and community interests should bear responsibility for the closing costs and prepaid items, which was the cost of the loan to complete the

25

purchase, in proportion to their ownership interests in the portion of the property purchased with the loan proceeds.

## D. Quitclaim Deed

Husband contends the quitclaim deed should not have been set aside based on the presumption of undue influence, because wife's community property interest was negligible. We conclude substantial evidence supports the trial court's finding that husband failed meet his burden to rebut the presumption of undue influence.

When a transaction between spouses provides an advantage to one spouse to the disadvantage of the other, there is a presumption that the transaction resulted from undue influence. (*In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 995.) In this case, husband had the burden to establish that wife's transmutation of property through the quitclaim deed was freely and voluntarily made, and with a complete understanding of the effect of a transfer of her community property interest to husband as his separate property. (*Id.* at pp. 999-1000.)

There was no evidence that either party properly understood the effect of executing the quitclaim deed. There is no evidence that either party understood the loan proceeds were community property or the extent of the community property interest in the Westlake Village home that wife was quitclaiming to husband as his separate property. In fact, the trial court found wife did not intend to quitclaim any of her community property interest in the home to husband. The quitclaim deed did not resolve the issue of the community's interest, in any event, because the community made payments on the loan after the quitclaim deed was executed which would give the community an ownership interest in the equity of the property.

26

## E.  Charges for Use of Westlake Village Property

Husband contends he should not have been charged the rental value of the Westlake Village property unless the court ordered exclusive use of the property.  He also contends he should have received credit for his payment of insurance and property taxes for the property.  On remand, the trial court will need to reconsider the issue of rental charges based on our conclusion that there are both separate and community interests in the property.

"'Where one spouse has the exclusive use of a community asset during the period between separation and trial, that spouse may be required to compensate the community for the reasonable value of that use.'  [Citation]  The right to such compensation is commonly known as a '*Watts* charge.'  (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374.)  Where the *Watts* rule applies, the court is 'obligated either to order reimbursement to the community or to offer an explanation for not doing so.'  [Citation.]  But 'where the asset is not owned outright by the community but is being financed,' the spouse in possession 'may satisfy the duty to compensate the community for use of the asset by making the monthly finance payments from his or her separate property.'  [Citation.]  Such offsets are commonly called '*Epstein* credits.'  (*In re Marriage of Epstein*[, *supra*,] 24 Cal.3d [at pp.] 84-85.)"  (*In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 978-979.)

"The trial court determines what is due the community 'after taking into account all the circumstances' relevant to the exclusive possession by one spouse.  (*In re Marriage of Watts, supra,* 171 Cal.App.3d at p. 374.)"  (*In re Marriage of Falcone and Fyke*, *supra*, 203 Cal.App.4th at p. 979.)  Imposition of a *Watts* charge is within the broad equitable discretion of the trial court and we review the court's decision for an abuse of discretion.  (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 818-819.)

On remand, the trial court should consider all of the relevant circumstances to redetermine the issue of *Watts* charges.  The portion of the fair market rental value that is

attributable to the community's interest in the property should be offset by the community's share of insurance, property taxes, and other maintenance costs for the property that were paid by husband. The court may also consider that the community did not have a monthly mortgage payment for the property because husband used his separate property to retire the loan obligation, and that husband's low housing expense was a factor used to increase his support obligations.

**F. Sanctions**

Husband contends the trial court should have awarded sanctions to him in the amount of his attorney fees for wife's excessive litigation of claims to his separate property which she ultimately stipulated belonged to him. Husband has not established an abuse of discretion as a matter of law.

"Section 271 provides that a family court may impose an award of attorney fees and costs 'in the nature of a sanction' where the conduct of a party or attorney 'frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.' (§ 271, subd. (a).)" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) "Sanctions under section 271 are appropriate whenever a party's dilatory and uncooperative conduct has frustrated the policy of promoting settlement of litigation and cooperation among litigants. [Citation.]" (*Id.* at. p. 1317.) We review the trial court's decision to grant or deny attorney fees as a sanction under section 271 under an abuse of discretion standard. (*Id.* at p. 1316.)

In this case, it was within the trial court's discretion to deny attorney fees as sanctions based on wife's litigation conduct. Wife's ultimate stipulation that certain property was husband's separate property does not establish entitlement, as a matter of law, to sanctions in the form of attorney fees. We find no abuse of discretion.

28

## DISPOSITION

The portion of the judgment concerning the Westlake Village property and *Watts* charges is reversed and remanded for further proceedings in accordance with this opinion.  In all other respects, the judgment is affirmed.  Appellant Frank Bonvino is awarded his costs on appeal.


KRIEGLER, J.

We concur:


TURNER, P. J.


BAKER, J.