Filed 3/18/25  Delaney v. Delaney CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TIMOTHY DELANEY,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>VIVIANE DELANEY,<br><br>  Defendant and Respondent. | 2d Civil No. B331423<br>(Super. Ct. No. 16FL02229)<br>(Santa Barbara County) |

Timothy Delaney[1] appeals from a dissolution judgment challenging the trial court's characterization of certain real property as community assets.  We will affirm.

FACTS

Timothy owned two pieces of real property when he and Viviane married in 2004.[2]  One property was a residence located

---

[1] We refer to Timothy Delaney and Viviane Delaney by their first names for clarity and convenience.  No disrespect is intended.

on Foothill Road, the other a residence on St. Ann Drive.  Both properties generated rental income.  On the date of their marriage, both properties were encumbered by mortgages.  During the marriage, Timothy refinanced the existing loans on both properties.

For each of these properties, Timothy opened and maintained a bank account into which he deposited rental income and out of which he paid all of the properties' expenses.  At trial he testified he never deposited any community assets into these bank accounts and never used community assets to pay any of the properties' mortgages or expenses.  At his deposition he testified "I have not thrown one piece of paper away of any separate property or community property intentionally to keep those accounts separate and to prove it."  Timothy also said he would provide more documents to correct his expert's deposition statement that the expert could not perform a direct tracing due to an absence of records.  Timothy explained, "Because there's some tracing that can be done that hasn't been done. . . .  I have tracing from separate property funds that I'm going to show have been deposited into separate property checking accounts."  He was asked to confirm that he "actually ha[s] those documents" and he responded "that's correct."

Timothy's forensic accounting expert, Gary Gray, testified at trial that due to limited records he could not directly trace the source of the deposits into the two bank accounts.  But he concluded there was no community interest in either property because Timothy said there was not and because Timothy's

<hr />

[2] Timothy does not challenge any aspect of the judgment except with respect to characterization of the two properties.  We, therefore, limit recitation of the facts.

separate property assets, including income earned on the properties, were sufficient to cover any loan payment and other expenses incurred on both St. Ann and Foothill. Therefore, it was "certainly possible for [Timothy] to do financially what he said he was doing."

Viviane's expert, Patrick Greene, disagreed. In 2010, Timothy had applied for and obtained a loan secured by St. Ann. By then the St. Ann property had become the family's primary residence. In the loan application, Timothy reported both community and separate property assets. Timothy used the loan proceeds to pay off the existing mortgage on St. Ann and all outstanding debt secured by Foothill. Based upon this evidence, and the presumption that loans obtained during a marriage were community property, Greene concluded the loan was community property and the community gained an interest in both properties. Greene also testified because he, like Gray, could not trace the source of all deposits into the two bank accounts and because income earned on the properties was insufficient to cover all of their expenses, augmentation from some other source would have been required, supporting his conclusion that community assets were commingled with separate property.

The trial court found Greene more persuasive, noting that "[t]here is a credibility issue here[ because] Timothy testified he gave 100% complete records to Mr. Gr[a]y – that is records that would have allowed identification of the source of all deposits. But it does not appear that Mr. Gr[a]y reviewed complete records" and "[t]he complete records were not entered as Exhibits. . . . Mr. Green[e] had no access to such records for review." The lack of these records made "detailed tracing essentially impossible." The court found "[p]articularly troubling

3

. . . what appears to be a deliberate choice to withhold available records" citing to Evidence Code section 412.[3]

On the issue of the characterization of the loan proceeds, the court "held that lenders clearly looked to Timothy's community property earnings during marriage as sources of potential repayment."

Although the trial court stated Timothy "testified credibly that it was his intention to maintain these properties as separate" it ruled St. Ann and Foothill were community assets and that Timothy was entitled to reimbursement for his separate property contribution per the *Moore/Marsden* rule.[4]

## STANDARD OF REVIEW

"We begin our analysis mindful that an 'order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation]  Further, ""[t]he finding of a trial court that property is

---

[3] Evidence Code, section 412 states:  "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."

[4] The rule arises from two cases:  *In re Marriage of Moore* (1980) 28 Cal.3d 366, and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426.  "When an individual enters a marriage owning a piece of real property, and the marital community pays the property's mortgage during the marriage, California law provides a formula through which to apportion the property's value upon the marriage's end.  Known as the *Moore/Marsden* rule, the formula awards the marital community a growing interest in the otherwise separate property as community funds are used to increase the property's equity."  (*In re Marriage of Mohler* (2020) 47 Cal.App.5th 788, 790.)

either separate or community in character is binding and conclusive on the appellate court if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences . . . .'" [Citation]  In reviewing the sufficiency of the evidence, "'[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.  [Citations.] "We must therefore view the evidence in the light most favorable to the prevailing party, giving [that party] the benefit of every reasonable inference and resolving all conflicts in [that party's] favor . . . .'" . . . 'All issues of credibility are . . . within the province of the trier of fact.'  [Citations.]  However, '[s]ubstantial evidence is not any evidence—it must be reasonable in nature, credible, and of solid value.'" (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 421.)

DISCUSSION

Timothy challenges both the trial court's finding that the St. Ann loan was community property and that comingled separate property and community property funds were used to pay the mortgages on the St. Ann and Foothill properties.

*St. Ann Loan*

"Loan proceeds acquired during marriage are presumptively community property; however, this presumption may be overcome by showing the lender intended to rely solely upon a spouse's separate property and did in fact do so.  Without satisfactory evidence of the lender's intent, the general presumption prevails." (*In re Marriage of Grinius* (1985) 166 Cal.App.3d 1179, 1187.)  "[V]irtually any credible evidence may

5

be used to overcome [the presumption]." (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 91.)

Substantial evidence supports the trial courts finding that the 2010 St. Ann loan proceeds were community property. We start with the presumption that the loan proceeds were community property. Timothy had the burden of proof to rebut that presumption. (*In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1424 (*Bonvino*).) Timothy did not proffer any direct evidence of the lender's intent. Instead, he relies upon the trial court's finding that he intended to keep his property separate, that he alone signed the note, and that his separate property secured the loan. He argues this evidence was sufficient to rebut the presumption.

Other evidence, however, supports the presumption. For example, the loan application revealed that the income earned on both St. Ann and Foothill was insufficient to cover the properties' combined debt and expenses. The application also listed undisputed community property assets, and in particular, Timothy's income as a realtor. A reasonable lender would look to Timothy's community property income as a likely source to cover the debt. (*Bonvino*, *supra*, 241 Cal.App.4th at p. 1424 [upholding "finding that . . . loan proceeds were community property, because [the] husband's salary [was] the primary source of income listed on the loan application"].) While we agree with Timothy that he was not necessarily required to present "testimony from the lender" to rebut the presumption, the trial court reasonably found Timothy's circumstantial evidence of the lender's intent was insufficient to rebut the presumption. "There being no satisfactory evidence to contradict the presumption, it must prevail." (*Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 211.)

6

Timothy laments that because he was required to list community assets on the loan application, the trial court's finding the lender relied upon those assets "would make it impossible for any married person to refinance separate property without creating a community property presumption." He may be correct, but he neglects to add that the presumption can be rebutted by satisfactory evidence of the lender's intent. Timothy did not submit that evidence.[5]

*Commingling*

It is presumed that property acquired during the marriage is community. (Fam. Code § 760.) "[T]he mere commingling of separate property and community property funds does not alter the status of the respective property interests, provided that the components of the commingled mass can be adequately traced to their separate property and community property sources. [Citation.] But if the separate property and community property interests have been commingled in such a manner that the respective contributions cannot be traced and identified, the entire commingled fund will be deemed community property pursuant to the general community property presumption of section 760. [Citation.]" (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 822-823.) The burden to trace the source of commingled funds falls to the party challenging the presumption. (*Buehler v. Buehler* (1946) 73 Cal.App.2d 472, 474.)

---

[5] In his reply brief, Timothy's argued federal law precluded the lender from treating his loan application as one for community debt. Because he raised this argument for the first time in his reply brief, we conclude he has waived the claim on appeal. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

Timothy contends there is no substantial evidence to support the trial court's finding that community funds were commingled with separate property funds in paying the St. Ann and Foothill mortgages. He argues the trial court improperly relied upon Greene's "assumption" that community funds were deposited into the properties' bank accounts. Greene made that assumption, in part, because income earned by the properties was not sufficient to account for all of the deposits into the two accounts and there were no documents showing the source of the deposits.

The trial court noted "[t]here is a credibility issue here." Neither party's expert could trace the source of the funds deposited into the St. Ann and Foothill bank accounts because they did not have the necessary documentation. Timothy testified during his deposition that he had these documents and that he would produce them. He did not and they were not offered at trial. As a result the trial court found it was "[p]articularly troubling" that Timothy made a "deliberate choice to withhold available records," and cited Evidence Code section 412 which allows a negative inference to be drawn under such circumstances. The court concluded that community funds were commingled with separate property funds.

Timothy argues even if the court doubted his credibility due to his failure to produce the documents, there is no "affirmative evidence" that the documents would have shown commingling and therefore their absence does not "fill the evidence gap for establishing commingling." He cites several cases that hold it is impermissible to infer a fact solely because contrary evidence is rejected. (See, e.g., *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 48 ["If a witness testifies, for

8

instance, that *it was not raining* at the time of the collision, and if the jury disbelieves that testimony, such disbelief does not provide evidence that it *was raining* at the time of the collision"]; *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1205 ["The rejection of a witness's testimony by the trier of fact has only the effect of removing that testimony from the evidentiary mix. Without more, the disregard or disbelief of the testimony of a witness is not affirmative evidence of a contrary conclusion."]; *People v. Samarjian* (1966) 240 Cal.App.2d 13, 18 ["The People must prevail on their own evidence, not on a vacuum created by rejection of a defense"].)

Here, unlike the cases Timothy relies upon, the trial court did not merely disbelieve Timothy. It also found he failed to present evidence under his control that was relevant to the issue of commingling. Under Evidence Code section 412 the court was permitted to draw a "negative inference" and under section 413[6] it could determine what inferences to be drawn by considering Timothy's willful suppression of related evidence. Thus, the court could properly infer that the withheld documents would have shown commingling. (*Estate of Moore* (1923) 65 Cal.App. 29, 34 [if "weaker and less satisfactory evidence" is produced the trial court is "entitled to presume that the omitted evidence would be unfavorable and, for that reason, was not offered"].)

Once there is commingling, to overcome the presumption that community property funds paid the mortgage, Timothy had

---

[6] Evidence Code section 413 states: "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case."

the burden to trace the funds deposited into the properties' accounts. The trial court found he failed to carry that burden. Timothy does not challenge that finding on appeal because he continues to maintain there was no commingling.

Finally, Timothy contends that even if there was a community interest in the properties, the court miscalculated the amount due the community because the community could not have gained an interest in these properties until the 2010 loan was funded and because in making his *Moore/Marsden* calculations, Greene did not account for Timothy's post separation payments on the properties. There is no indication that Timothy raised these claims below and therefore they are forfeited. (*People v. Simon* (2001) 25 Cal.4th 1082, 1103.)

DISPOSITION

Judgment is affirmed. Respondent shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:


GILBERT, P.J.


BALTODANO, J.

10

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Ferguson Case Orr Paterson, Wendy C. Lascher, for Plaintiff and Appellant.

Dennis G. Temko, Edward S. Temko, for Defendant and Respondent.