[S.F. No. 24172. Oct. 30, 1980.]

In re the Marriage of LYDIE D. and DAVID E. MOORE.
DAVID E. MOORE, Appellant, v.
LYDIE D. MOORE, Respondent.

368

COUNSEL

F. J. Donehue for Appellant.

Andrew G. Wagner and Milch, Wolfsheimer, Wagner & Schmidt as Amici Curiae on behalf of Appellant.

Sullivan, Rizzo & Eisenberg and Ralph A. Rizzo for Respondent.

Daniel W. Grindle and Gade, Grindle & Hayne as Amici Curiae on behalf of Respondent.

OPINION

MANUEL, J.—David E. Moore appeals from an interlocutory judgment dissolving his marriage to Lydie D. Moore. He contests only the trial court's determination of the community property interest in the residence located at 121 Mira Way, Menlo Park and the finding that he deliberately misappropriated community property.

The principal issue to be decided in this case is the proper method of calculating the interest obtained by the community as a result of pay-

ments made during marriage on the indebtedness secured by a deed of trust on a residence which had been purchased by one of the parties before marriage.

Lydie purchased the house at 121 Mira Way in Menlo Park in April 1966, about eight months before the parties' marriage. The purchase price was $56,640.57. Lydie made a down payment of $16,640.57 and secured a loan for the balance of the purchase price. She took title in her name alone as "Lydie S. Doak, a single woman." Prior to the marriage she made seven monthly payments and reduced the principal loan balance by $245.18.

The parties lived in the house during their marriage and until their separation in June 1977. They made payment during this time with community funds and reduced the loan principal by $5,986.20. Lydie remained in the house and continued to make payments, reducing the principal by an additional $581.07 up to the time of trial. At that time the total principal paid on the purchase price was $23,453.02, the balance owing was $33,187.55, the market value of the house was $160,000, and the equity therein $126,812.45.

The trial court concluded that the residence was Lydie's separate property but that the community had an interest in it by virtue of the community property payments made during the course of the parties' marriage. The trial court further concluded that the community interest was to be determined according to the ratio that the reduction of principal resulting from community funds bears to the reduction of principal from separate funds. No credit was given for the amount paid for interest, taxes and insurance.

The community interest was calculated by multiplying the equity value of the house by the ratio of the community's reduction of principal to the total amount of principal reduction by both community and separate property ($5,986.20 divided by $23,453.02 equals 25.5242 percent). The amount of the community interest was thus determined to be $32,367.86. Lydie's separate property interest was calculated by multiplying the equity value of the house by the ratio of the separate property reduction of principal to the total amount of principal reduction ($17,466.82 divided by $23,453.02 equals 74.4758 percent). Lydie's separate property interest was thus determined to be $94,444.59.

The parties agree that the community has acquired an interest in the house by virtue of the community funds used to make the payments.[1] They disagree, however, as to how the interest is to be determined. ▪ Appellant contends that the community property interest should be based upon the full amount of the payments made, which includes interest, taxes and insurance, rather than only on the amount by which the payments reduce the principal. He relies on *Vieux v. Vieux* (1926) 80 Cal.App. 222 [251 P. 64].

In *Vieux*, the husband contracted before marriage to buy certain property and paid $280 on account of the purchase price. After the parties' marriage they spent $553.68 of community funds for payment of principal, interest and taxes. The Court of Appeal held that the trial court erred in finding the property to be solely the husband's separate property and stated the rule as follows: "Thus property purchased by one spouse before marriage is separate property . . . , and this is true though a part of the purchase price is not paid until after marriage, in the absence of a showing that any part of the balance was paid with community funds. In any event it would be community property only to the extent and in the proportion that the purchase price is contributed by the community." (80 Cal.App. at p. 229.) The court concluded that "the community interest was entitled to share in the title to the property in the same proportion as the amount contributed to the purchase price by the community, to wit, $553.68 bore to the sum of $833.86 [*sic*]— the total amount paid by the respective parties therefor." (*Ibid.*)

Although the *Vieux* court included interest and taxes in its calculation, there is no indication that the issue of the propriety of doing so was presented to the court. The concern in that case was with the question of whether there should be any community interest at all. Since the *Vieux* court did not expressly consider the question of including interest and taxes in the community's interest in the property, we do not consider it to be persuasive authority on that issue.

▪ Where community funds are used to make payments on property purchased by one of the spouses before marriage "the rule developed

---

[1]Although the trial court designated the community's interest as an "equitable charge on/right," it is clear under California law that the interest is properly characterized as a community property interest in the house. (See *Forbes v. Forbes* (1953) 118 Cal.App.2d 324, 325 [257 P.2d 721]; *Estate of Neilson* (1962) 57 Cal.2d 733, 744 [22 Cal.Rptr. 1, 371 P.2d 745].)

through decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds." (*Forbes* v. *Forbes, supra*, 118 Cal.App.2d 324, 325; see also *Bare* v. *Bare* (1967) 256 Cal.App.2d 684, 690 [64 Cal.Rptr. 335]; *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 257 [105 Cal.Rptr. 483]; *Estate of Neilson* (1962) 57 Cal.2d 733, 744 [22 Cal.Rptr. 1, 371 P.2d 745].) This rule has been commonly understood as excluding payments for interest and taxes. For example in *Bare* v. *Bare*, the Court of Appeal directed the trial court to determine the increase in equity in the house during marriage and the fair market value of it before and after the marriage, stating: "the community is entitled to a minimum interest in the property represented by the ratio of the community investment to the total separate and community investment in the property. In the event the fair market value has increased disproportionately to the increase in equity the wife is entitled to participate in that increment in a similar proportion." (256 Cal. App.2d at p. 690; accord *In re Marriage of Jafeman, supra*, 29 Cal. App.3d at pp. 256-257.) Decisions of other community property jurisdictions are in accord (see, e.g. *Hanrahan* v. *Sims* (1973) 20 Ariz.App. 313 [512 P.2d 617, 621]; *Gapsch* v. *Gapsch* (1954) 76 Idaho 44 [277 P.2d 278, 283, 54 A.L.R.2d 416]; *Merkel* v. *Merkel* (1951) 39 Wn.2d 102 [234 P.2d 857, 864]), and *Vieux* apparently stands alone in suggesting a contrary rule.

■ Appellant argues, however, that interest and taxes should be included in the computation because they often represent a substantial part of current home purchase payments. We do not agree. Since such expenditures do not increase the equity value of the property, they should not be considered in its division upon dissolution of marriage. The value of real property is generally represented by the owners' equity in it, and the equity value does not include finance charges or other expenses incurred to maintain the investment. Amounts paid for interest, taxes and insurance do not contribute to the capital investment and are not considered part of it. A variety of expenses may be incurred in the maintenance of investment property, but such expenses are not considered in the valuation of the property except to the extent they may be relevant in determining its market value from which in turn the owners' equity is derived by subtracting the outstanding obligation. Upon dissolution, it is the court's duty to account for and divide the assets and the debts of the community. Payments previously made for interest, taxes and insurance are neither. Moreover, if these items were consid-

ered to be part of the community's interest, fairness would also require that the community be charged for its use of the property.

In summary, we find no basis for departing from the present rule which excludes amounts paid for interest, taxes, and insurance from the calculation of the respective separate and community interests. We turn to that calculation in this case.

Although many formulae have been suggested, we are not persuaded that any of them would be an improvement over a formula based on the reasoning of *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446 [152 Cal.Rptr. 668], which was approved in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285]. We were there concerned with determining the respective community and separate interests in a residence purchased during marriage with a combination of community and separate funds where the community contributed the loan and subsequent payments on it and there was an agreement or understanding that the party contributing the separate property down payment was to retain a pro rata separate property interest. (*Id.*, at pp. 816-817.) The formula we used there recognized the economic value of the loan taken to purchase the property. In the formula postulated in *Lucas* the proceeds of the loan were treated as a community property contribution on the assumption that the loan was made on the strength of the community assets. (*Id.*, at pp. 816-817, fn. 3.)

■ In the present situation, the loan was based on separate assets and was thus a separate property contribution; the down payment was also a separate property contribution. Therefore under the *Lucas/Aufmuth* formula the proceeds of the loan must be treated as a separate property contribution. Accordingly, the formula would be applied as follows: The separate property percentage interest is determined by crediting the separate property with the down payment and the full amount of the loan less the amount by which the community property payments reduced the principal balance of the loan ($16,640.57 plus ($40,000 minus $5,986.20) equals $50,654.37). This sum is divided by the purchase price for the separate property percentage share ($50,654.37 divided by $56,640.57 equals 89.43 percent). The separate property interest would be $109,901.16, which represents the amount of capital appreciation attributable to the separate funds (89.43 percent of $103,359.43) added to the amount of equity paid by separate funds ($17,466.82). The community property percentage interest is found by

dividing the amount by which community property payments reduced the principal by the purchase price ($5,986.20 divided by $56,640.57 equals 10.57 percent). The community property share would be $16,911.29, which represents the amount of capital appreciation attributable to community funds (10.57 percent of $103,359.43) added to the amount of equity paid by community funds ($5,986.20).

In this case the trial court used a different formula which appears to have been based upon a statement in *In re Marriage of Jafeman, supra,* 29 Cal.App.3d 244, 256, that might be interpreted to mean that the interests are to be determined according to the proportionate equity contributions only, with no credit given for the loan contribution. This formula might be appropriate when the obligation on the property has been fully paid. To apply it in the present situation, however, when the purchase price of the amount owing on the loan has not been fully paid ignores the role of the loan and produces inconsistencies with the principles of the *Lucas/Aufmuth* formula.

■ Although the trial court erred in determining the parties' interests in the residence, the error was in David's favor. Since he was not prejudiced by the error and Lydie did not appeal, reversal of this portion of the judgment is unwarranted. (Cal. Const., art. VI, § 13; *Walker* v. *Etcheverry* (1941) 42 Cal.App.2d 472, 476 [109 P.2d 385]; *Johnson* v. *A. Schilling & Co.* (1961) 194 Cal.App.2d 123, 134 [14 Cal.Rptr. 684]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 212-214, pp. 4203-4204.)

■ David also challenges the trial court's finding that he deliberately misappropriated items of community personal property by disposing of them without valuable consideration and without the consent of his wife in order to purchase alcoholic beverages. Based on this finding the court made a compensatory award to Lydie pursuant to Civil Code section 4800, subdivision (b)(2), which allows the court to "award, from a party's share, any sum it determines to have been deliberately misappropriated by such party to the exclusion of the community property ...interest of the other party." David contends that the evidence is insufficient to support this finding. We agree.

The record discloses that a number of community property items were missing from the home at the time of separation. Both David and Lydie testified that certain community items had been disappearing during the last few years of their marriage. David said that none of

these items were in his possession and that he did not know where they were. Lydie believed that David sold the items in order to purchase alcoholic beverages, but she did not know the prices he received for the items.

Under section 5125, subdivision (b) of the Civil Code, "A spouse may not make a gift of community personal property, or dispose of community personal property without a valuable consideration, without the written consent of the other spouse." Lydie, however, has failed to prove that David made a gift of the missing items or disposed of them without valuable consideration. The only evidence presented on the question—Lydie's belief that he disposed of the items to buy alcoholic beverages—indicates to the contrary. David could not have purchased alcoholic beverages with the items if he had not received valuable consideration for them.

Lydie suggests that the trial court's finding of deliberate misappropriation could also be upheld on the ground that David's disposal of the items violated subdivision (c) of Civil Code section 5125, which provides that "A spouse may not sell, convey, or encumber the furniture, furnishings, or fittings of the home, or the clothing or wearing apparel of the other spouse or minor children which is community personal property, without the written consent of the other spouse." The trial court made no findings regarding whether the items missing constituted "furniture, furnishings, or fittings of the home," and we are unable to make that determination on the record presented. Accordingly, we reverse that portion of the judgment.

The portion of the judgment determining the rights of the parties in and awarding the community property is reversed with directions to redetermine the amount, if any, that was deliberately misappropriated through violation of Civil Code section 5125, subdivision (c), and to adjust the award accordingly. The judgment is affirmed in all other respects. Each side shall bear its own costs on this appeal.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.