Filed 4/13/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of JODIE and GREG MOHLER. | |
| JODIE E. MOHLER, | E071314 |
| Respondent, | (Super.Ct.No. FAMRS1200248) |
| v. | OPINION |
| GREG MOHLER, | |
| Appellant. | |

APPEAL from the Superior Court of Riverside County. Teresa S. Bennett, Judge. Vacated and remanded.

Joel S. Seidel for Appellant.

Holstein, Taylor and Unitt and Brian C. Unitt; Howington & Associates and Joseph W. Howington for Respondent.

When an individual enters a marriage owning a piece of real property, and the marital community pays the property's mortgage during the marriage, California law provides a formula through which to apportion the property's value upon the marriage's end. Known as the *Moore/Marsden* rule, the formula awards the marital community a

growing interest in the otherwise separate property as community funds are used to increase the property's equity.

In this dissolution case, the husband entered the marriage owning a home that the parties lived in as spouses for over 12 years. The parties agree that application of the *Moore/Marsden* rule through the date of their separation resulted in the community beneficially owning 33.66 percent of the property. However, by the time of their dissolution trial, the husband had lived in the property for more than six years post-separation, paying the mortgage with his separate income. At the wife's request, the trial court found that the community's interest in the property continued to increase throughout those years, just as if community funds had been used to pay the mortgage during that time, resulting in the community obtaining a 64.9 percent interest in the property.

We hold that this was error. The *Moore/Marsden* rule applies only insofar as community funds are used to build equity in an asset, a situation which often terminates, as it did here, upon separation. If the husband obtained a benefit from the community through living in the house beyond the parties' separation date, the trial court may account for this through so-called *Watts* charges, a different legal concept than the *Moore/Marsden* rule. *Watts* charges equitably compensate the community for one spouse's use of a community-owned home. We hold, as a matter of first impression, that *Watts* charges may be levied against a spouse for his or her post-separation occupation of a property where the property is not *entirely* community property, but rather is treated as

2

*partially* community property due to the *Moore/Marsden* rule. We thus vacate the judgment and remand to the trial court for the proper application of *Moore/Marsden* and calculation of any *Watts* charges.

## I. BACKGROUND

The sole issue in this appeal is how to allocate the value of a Rancho Cucamonga residential property lived in by plaintiff and respondent Jodie E. Mohler and defendant and appellant Greg Mohler during their marriage. (Because of their identical last names, this opinion will use their first names for clarity.) The parties have no factual disputes that matter here.

Greg bought the home, which the parties refer to as the Lomello property, for $168,000 in February 1995, before he and Jodie married. His name remained on the title. The couple wed in September 1998, and they lived at the Lomello property for over 12 years. During that time, they used $56,557 to pay principal on the property's mortgage. They separated on July 2, 2011. From then, Greg lived at the Lomello property and paid its mortgage for over six years until the dissolution trial in late 2017. At the time of the trial, the Lomello property was valued at $530,000.

## II. DISCUSSION

### A. *The* Moore/Marsden *Calculation*

Under California's community property laws, property that a spouse acquires before the marriage, or during the marriage by way of gift or inheritance, is that spouse's separate property. (Cal. Const., art. I, § 21; Fam. Code § 770.) On the other hand,

3

property acquired during the marriage due to the time, labor, or skill of a spouse is community property in which the spouses have an equal interest. (Fam. Code § 760.) Upon dissolution, community property is divided equally between spouses, and separate property is awarded to only the owner. (Fam. Code §§ 770, 2550.)

When one spouse enters the marriage owning the home in which the spouses are to live, it is not self-evident how to characterize the appreciation on that separate real property during the marriage, when, as is common, the marital community uses its funds to pay the loan on that separate asset. In *In re Marriage of Moore* (1980) 28 Cal.3d 366, 371-372 (*Moore*), our Supreme Court held that where community funds are used to pay down the principal owed on a loan on property purchased by one spouse before marriage, the community obtains "'a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds.' [Citations.]" Thus, as the community makes payments during the marriage that reduce the principal owed on the separate property, the community acquires a beneficial interest in that property, even if title remains in the name of the original owner.[1]

---

[1] We use the term "beneficial interest" to describe the community's *Moore/Marsden* interest in property that is titled in an individual spousal owner, as all we need decide here is that the community gains at least an equitable interest that is recognized at the time, if any, that a family law court engages in equitable division of the spouses' estates. *Moore*, however, could be read to indicate that the community interest is in fact a legal one. (*Moore*, *supra*, 28 Cal.3d at p. 371, fn. 1 ["Although the trial court designated the community's interest as an 'equitable charge on/right,' it is clear under California law that the interest is properly characterized as a community property interest in the house. [Citations.]") A consequence of that reading might be that a home with a

4

*Moore* chose a specific way to determine the community's increasing interest in the property. It used the original purchase price as a reference point for a 100 percent interest in the property. As a marriage begins, *Moore* attributes the entire purchase-price value of the property to the separate owner. (*Moore*, *supra*, 28 Cal.3d at pp. 373-374.) After that point, the community's interest in the property is determined by "dividing the amount by which community property payments reduced the principal by the purchase price." (*Id.* at p. 374.) Thus, if the original purchase price of a property were $100,000, the community would obtain a constructive one percent interest in it for each $1,000 in principal on the loan that community assets paid down. The owning spouse's separate ownership share would be reduced accordingly.[2]

*In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 437 (*Marsden*) supplemented *Moore*'s calculation by establishing that the owner of the separate property should be awarded the pre-marriage appreciation in the property's value. Nevertheless,

community interest could not be sold without the consent of the community. By our terminology, we do not mean to address this issue, which is not before us.

[2] In selecting a way to calculate the fraction of ownership attributable to the community, *Moore* made important determinations as to both the denominator and the numerator. The denominator for the calculation is the purchase price and not either (a) the amount of out-of-pocket funds that the purchaser used, exclusive of the loan, or (b) the fair market value of the property at the time of marriage. The numerator for the calculation is the amount by which the community funds reduced the principal owed on the loan, that is, created equity in the property. Funds used for interest, taxes, or maintenance are inapposite to the calculation. As the converse of *Moore*'s decision to limit the community's compensation to only payments that built equity in a property and to not credit expenses incurred during its use, a spouse who separately owns a home is not compensated under *Moore/Marsden* for the rental value of the property by receiving a credit for any benefit the community received by living in the home. (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1555.)

5

*Marsden* did not incorporate the pre-marital appreciation into *Moore*'s calculation of the respective separate and community interests in the property; that calculation remains tied by *Moore* to the amount of equity that the community has contributed to the property, as a percentage of the original purchase price. (*Marsden*, *supra*, 130 Cal.App.3d at pp. 437-439.) Thus, as community funds are used to pay principal on the mortgage, the community acquires a constructive or beneficial equity interest in the property, but the appreciation prior to marriage remains with the separate property owner. This ultimately means that the community's share in the value of the property at the end of a marriage can be determined by adding together (a) the amount of capital appreciation *during* the marriage that is attributable to community funds under the *Moore* formula and (b) the principal payments made by the community funds, which are returned to the community. (*In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1008.)

Later cases have addressed more complicated aspects of the *Moore/Marsden* rule. For example, the community is entitled to an interest in the property when the spouses refinance a separate property and pay off the original mortgage with a new loan (*In re Marriage of Branco* (1996) 47 Cal.App.4th 1621, 1629), and the community is entitled to reimbursement when its funds are used for capital improvements to a separate property (*In re Marriage of Allen* (2002) 96 Cal.App.4th 497, 501). This case concerns only a straightforward *Moore/Marsden* calculation, where the community's interest in the Lomello property can be calculated simply by dividing the amount of principal paid during the marriage by the original purchase price.

6

B.  *The* Moore/Marsden *Calculation Should Have Ended When the Community Payments Stopped at Separation*

In this case, each party calculated that, under *Moore*, the community obtained a 33.66 percent interest in the Lomello property through the time that the Mohlers separated.  This was the figure that Greg asserted at trial was attributable to the community as well as one that Jodie provided in her pretrial brief and pretrial expert's report.  In his appellate briefing, Greg again adopts that figure, explaining that it is based on Jodie's expert's calculation that the community reduced the loan principal by $56,557 during marriage divided by the property's $168,000 purchase price.[3]  Jodie does not contest that this calculation accurately reflects the community interest in the Lomello property as of the spouses' separation.

The effect of this *Moore*/*Marsden* calculation is as follows.  During the marriage, the value of the Lomello property increased from $185,000 to $530,000, for an equity gain of $345,000.  With a 33.66 percent interest in that appreciation ($116,127) added to its $56,557 contribution to the equity, the community would have a $172,684 interest in the property, with the remainder Greg's separate property.

At trial, however, Jodie abandoned her pretrial view and advanced an argument that would nearly double the community's interest in the Lomello property.  She argued that the *Moore*/*Marsden* calculation is affected by the fact that Greg had obtained the benefit of living in the property for over six years post-separation.  By including in the

---

[3]  Due to the rounding of numbers, there are some insignificant differences in the numbers used at various places of the record and the briefing.

7

calculation the equity accumulated by payments that Greg made during this period that reduced the mortgage principal by an additional $52,482, Jodie's argument led to the community obtaining a 64.9 percent interest in the property, rather than the 33.66 percent interest at the time of separation. The trial court accepted this argument. Based on its 64.9 percent interest, the trial court awarded the community $223,905 of the $345,000 appreciation during the marriage. As well, the trial court returned to community not only the $56,557 in principal payments made during the marriage, but also the $52,482 in principal paid post-separation, bringing the community's total interest in the property to $332,944. This community share in the property was well above the $172,684 warranted under the straightforward *Moore*/*Marsden* calculation discussed above.

Jodie and the trial court were correct to *value* the property as of the trial date. When the trial court determines the value of the community's property interest in a residence, the property is to be valued as of the date of trial, not as of the date of the parties' separation. (Fam. Code § 2552, subd. (a); *In re Marriage of Sherman* (2005) 133 Cal.App.4th 795, 800.) Prior to a dissolution trial, a party may provide notice that, for equitable reasons, it seeks to value the property as of an earlier date that is after the separation (Fam. Code § 2252, subd. (b)), but neither Greg nor Jodie sought the use of an earlier date here.

Jodie and the trial court, however, were incorrect to use the *Moore*/*Marsden* calculation to increase the community's beneficial ownership interest due to payments, made from Greg's separate property, beyond the date of separation.

8

As a legal matter, this extension of *Moore*/*Marsden* was unwarranted by the method by which the community interest is determined under the caselaw. *Moore*/*Marsden* is founded on a conception that community property is being "invested" in the separate property by creating equity in it. Thus, during a marriage, only the portion of community assets that is used to pay off loan principal is relevant to establishing the community interest in the property. After separation, however, the earnings and accumulations of a spouse are that spouse's separate property. (Fam. Code § 771, subd. (a).) Just as Greg's pre-marriage reduction of loan principal did not increase the community's interest under *Moore*/*Marsden*, neither do his post-separation payments from his separate property.

There appears to be no dispute in this case that, after separation, the $52,482 in principal that Greg paid came from his separate property (as did funds he used for interest, taxes, and maintenance). The community's equity interest in the Lomello property thus no longer increased under the *Moore*/*Marsden* approach once community assets were no longer paying down the property's principal. That is, the 33.66 percent community interest in the property did not increase after separation.

Using *Moore*/*Marsden* to compensate the community for Greg's post-separation occupation of the Lomello property also is improper as a practical matter. Extending the formula here led to a transfer of funds from Greg that is not conceptually connected to the reimbursement the community is entitled to from his use.

9

Consider what reimbursement to the community is warranted. If Greg had *not* lived at the property post-separation and the property had been rented, the community should be credited with a 33.66 percent share of the amount of profit from the rental, i.e, its proportional share of the amount by which the rental value exceeded the expenses to maintain and operate the property. That is, for example, if the property could be rented at a $1000 monthly profit, then the community would receive about $337 for each month of the rental. That would be the amount which the community would be deprived by Greg's living there. That monthly rental profit value could be minimal or substantial depending upon the property's post-separation rental value and carrying costs.

*Moore/Marsden*, however, has nothing to do with that calculation of rental profit. It does not depend on the rental value of the property or its carrying costs. Rather, *Moore/Marsden* brings a benefit to the community depending upon (a) how much principal is paid off with each mortgage payment (i.e., how much the community "invests" in the property), and (b) how much the property has appreciated over the entire course of the marriage and separation.

In applying the *Moore/Marsden* formula here, the trial court effectively awarded the community an additional equity interest for each month that Greg occupied the property based on the amount of principal Greg paid, which has nothing to do with the property's post-separation rental value to the community. Further, that equity interest brought a return based on the amount that the property had appreciated during the approximately nineteen years of marriage and separation, which also bears no relation to

10

the rental value to the community. The trial court thus erred in increasing the community's interest in the property under *Moore/Marsden* to compensate the community for Greg's occupying the property post-separation.

Jodie cites *In re Marriage of Priddis* (1982) 132 Cal.App.3d 349, 355 for the proposition that when an asset increases in value from inflation or market forces, "generally it is fair that both parties share in that increased value." Thus, she believes that increasing the community interest post-separation through the *Moore/Marsden* calculation was the equitable way for her to share in the Lomello property's value increase. Even under our ruling, however, the community (and thus Jodie) *does* share in a post-separation, pre-trial increase in the property's value. The community had a beneficial 33.66 percent interest in the property at the time of separation, and it shares proportionally in the equity increase in the property through the time of trial. Thus, the community paid $56,557 in principal during marriage, yet should receive a return of not just that principal payment, but also its proportional share ($116,127) of the increase in equity ($345,000) beginning on the marriage date, regardless of the extent to which that equity increase occurred during the marriage or during the separation. Had the trial occurred immediately upon separation, the community's recovery would have been limited to 33.66 percent of the equity increase to that point only. For this reason, the community does "share in [the] increased value" through the couple's trial. (*Ibid.*)

C. *A Court May Impose* Watts *Charges When the Community Has a Partial Beneficial Interest in a Property*

While she was incorrect to extend the *Moore/Marsden* rule, Jodie nevertheless was correct that the community may be compensated for its loss of rental income due to Greg's occupation of the Lomello property for over six years after the couple separated. In our view, that compensation should occur through so-called *Watts* charges rather than through *Moore/Marsden*. (See *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 373-374 (*Watts*).)

Family law courts are courts of equity. (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1174.) *Watts* charges are used to compensate the community when one spouse has the exclusive use of a community asset, most often the couple's residence, between separation and trial. The spouse using the property is charged "'for the reasonable value of that use.'" (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978.)[4]

The trial court has discretion, based on equitable considerations, as to whether to impose *Watts* charges and in what amount. (See *In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 318 [*Epstein* credits]; *In re Marriage of Dellaria & Blickman-Dellaria* (2009) 172 Cal.App.4th 196, 201 [review of orders dividing marital property].) Family Code section 2555, however, permits us to revise the disposition of the community estate

---

[4] The reverse of the *Watts* charge concept is the "*Epstein* credit," whereby a spouse who uses his or her separate property to pay a community obligation may seek reimbursement from the community estate. (See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85.) "*Watts* charges" collect from a spouse for use of property; "*Epstein* credits" repay the spouse for a payment.

12

"in all particulars, including those which are stated to be in the discretion of the court."
We conclude that ordering a revision is warranted here, where the trial court used an
incorrect vehicle (*Moore*/*Marsden*) to account for a fact (post-separation occupation of
the property) that could properly be the basis of *Watts* charges.

*Watts* charges typically have been applied where the community owns the entire
property, for example, because it was purchased with community funds during the
marriage. In such a case, the court considers the "reasonable rental value" of the home as
a guidepost in attempting to ensure that the "net fiscal impact" of a spouse's occupation
of the home is reflected in the division of the couples' property. (*In re Marriage of
Jeffries* (1991) 228 Cal.App.3d 548, 554-555.)

In trial court, Greg suggested using *Watts* rather than *Moore/Marsden*. He argued
that Jodie was "mixing *Moore*[/]*Marsden* with *Watts*" by increasing the community share
of the Lomello property based on his post-separation occupation of it. He argued that
"*Moore*[/]*Marsden*, it stops at the date of separation . . . . It's *Watts* [charges] when the
opposing side . . . is allowed to get some sort of rental value. . . ." Jodie's counsel
responded that he has "never done a *Watts* when you have a separate [property]." Greg's
argument was correct.

We conclude that *Watts* charges may be applied where, as here, the community
does not own the property outright but instead maintains a beneficial partial interest in the
property due to a *Moore*/*Marsden* calculation. The concept is precisely the same as
*Watts* charges when the community maintains title to the home, but with the amount

13

charged discounted for the fact that the community maintains only a partial interest in the property for purposes of dividing the property upon a marital dissolution.

We will leave the precise *Watts* calculation to the trial court in this case, as the parties have not briefed on appeal their arguments as to the specific calculation, and they may not have fully presented their evidence and arguments to the trial court. The trial court should start the *Watts* calculation by determining the overall profit from rental that would have obtained during the period in which Greg occupied the Lomello property. This may be done by subtracting from the expected monthly rent the amount necessary for expenses, including mortgage, taxes, homeowner's insurance, maintenance, and repair. The court then should use 33.66 percent of this amount of net rental profit as the amount that Greg is charged by the community for his use of the property between separation and trial. In the final disposition of assets, of course, Greg will effectively receive half of the community estate, so the *Watts* charges will not go entirely to Jodie. Nevertheless, the calculation we describe here, along with the re-calculation of the *Moore/Marsden* result, guides the division of assets between Greg and the community.[5]

---

[5] We do not mean to constrain the trial court's proper discretion in equitably applying *Watts* charges upon considering factors not articulated here, but only to articulate the basic approach for the trial court.

## III. DISPOSITION

The trial court's order is VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion.  Greg is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:

CODRINGTON
Acting P. J.

FIELDS
J.

15