Filed 8/17/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Marriage of NAKIYA RAMSEY and STEVEN HOLMES. | B305584 |
| | (Los Angeles County Super. Ct. No. BD648235) |
| NAKIYA RAMSEY, Respondent, v. STEVEN HOLMES, Appellant. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Rolf M. Treu, Judge.  Reversed and remanded.

Joel S. Seidel for Appellant.

James Alex Karagianides for Petitioner and Respondent.

Steven Holmes appeals from a judgment in a marital dissolution action. Holmes raises a single issue. He challenges the family court's determination of the community property interest in the family home. Although he concedes that community funds were used during the marriage to make the mortgage payments on the house, which he bought using his separate property before marriage, he asserts the court erred by using an incorrect number in its calculation of the community property share in the house. The reason for the court's error? Holmes's now-former wife, Nakiya Ramsey (who filed the petition for dissolution), failed to submit sufficient evidence to allow the court to determine the correct number, and Holmes, while recognizing at trial the absence of that critical evidence, declined to submit it, believing it was Ramsey's burden to do so.

We hold that where it is undisputed that there is a community property interest in real property, it is the obligation of *both* spouses to ensure that the family court has the information necessary to determine that interest, no matter which spouse brought the dissolution action. If the spouses fail to do so, the family court must direct them to furnish the missing information, reopening the case if necessary. Because the determination of the community property interest in the property at issue in this case was based upon incomplete information, we reverse the judgment and remand with directions to the family court to hold a limited retrial to determine the amount of community funds used to reduce the mortgage principal and to recalculate the community property interest.

# BACKGROUND

Nakiya Ramsey and Steven Holmes were married on October 27, 2007 and separated on April 27, 2015.  They have two children, one born in December 2004 and the other born in June 2007.  The family lived together in the home at issue from February 1, 2005 until Ramsey and Holmes separated on April 27, 2015.  Ramsey filed a petition for dissolution of marriage in October 2016.

A one-day trial was held on Ramsey's petition in December 2019.  The only issues at trial related to custody of the children, child support, and the community property interest in the family home.  Our discussion is limited to the evidence presented regarding the family home.  Before we begin that discussion, however, we provide context by setting forth the law governing the determination of the community property interest in the home.

## A.    *The Moore/Marsden Formula*

In *In re Marriage of Moore* (1980) 28 Cal.3d 366 (*Moore*), the California Supreme Court addressed "the proper method of calculating the interest obtained by the community as a result of payments made during marriage on the indebtedness secured by a deed of trust on a residence which had been purchased by one of the parties before marriage."  (*Id.* at pp. 369–370.)  The court set out a formula (*id.* at pp. 373–374) that subsequently was refined and supplemented in *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 437–439 (*Marsden*).

3

Under the *Moore/Marsden* formula, a family court must go through the following steps to determine the community property interest:

1.	Determine the amount by which the community property payments (typically, payments made from the date of marriage until the date of separation) reduced the principal on the mortgage.

2.	Calculate the community property percentage share by dividing the amount determined in step one by the purchase price.

3.	Determine the appreciation in the value of the house during the marriage (i.e., from the date of marriage until the date of dissolution).

4.	Multiply the appreciation during the marriage (the amount determined in step three) by the community property percentage share (the percentage determined in step two) to determine the community property share in the appreciation of the property.

5.	Add the community property share in the appreciation of the property (the amount determined in step four) to the amount of community funds used to pay down the principal on the mortgage (the amount determined in step one) to determine the total community interest in the property at the time of dissolution.

As is obvious from the above formula, in order to make these calculations the court must have the following information:  (a) the purchase price of the house; (b) the amount of community funds used to reduce the mortgage principal (which in many cases, such as the present case, can be determined by calculating the difference between the balance on the mortgage at the start of the marriage and the

4

balance at separation); (c) the market value of the house at the start of the marriage; and (d) the market value of the house at dissolution.

B. *Trial Proceedings*

As noted, trial of this case took place in a single day. In her case-in-chief, Ramsey presented the following evidence.

Holmes purchased the home in January 2005 as his separate property. The total purchase price was $740,000; Holmes put down $140,000 and obtained a $600,000 mortgage on the property. Because the mortgage had an adjustable interest rate, the amount of the monthly payment varied, but the average monthly payment during the relevant time period was $3,200. During the marriage (until separation), the mortgage payments were made using community funds. Ramsey testified that, based upon her investigation, the home was worth $1.2 million at the time of the trial.

Ramsey also called Holmes to testify as part of her case-in-chief. During direct examination, Ramsey's counsel questioned Holmes about three income and expense declarations he had filed in 2017, 2018, and 2019.[1] Each form declaration had a section for Holmes's average monthly expenses related to his home. In his declaration filed in 2017, Holmes checked the box for mortgage, and filled in the amount as $3,000; he did not fill in the spaces asking for the amount of principal and the amount of interest paid. In each of the spaces asking for the

---

[1] Those declarations were admitted into evidence as Exhibit 12.

5

amount of real property taxes and homeowner's insurance, Holmes wrote, "INC." In his 2018 declaration, Holmes indicated that his average monthly mortgage payment was $3,558, that the average amount of principal paid was $576, and that the interest paid was $1,505; he also indicated that taxes and insurance were included in the mortgage payment. In his 2019 declaration, Holmes indicated the average mortgage payment was $3,624, with $1,202 going toward principal and $2,288 in interest; again, he indicated that taxes and insurance were included in the mortgage payment.

Although Ramsey's counsel questioned Holmes about the amounts he listed for his average monthly mortgage payments, she did not ask any questions about, or draw any attention to, the various components that were included in those payments. Counsel did, however, ask Holmes about the outstanding balance on the mortgage at the time of the marriage and *at the time of the trial* (which was four and a half years after the date of separation). Holmes's testimony was somewhat uncertain; however, his testimony reasonably could be construed to state that the outstanding balance was $576,000 at the start of the marriage and $545,000 at the time of the trial.[2] Counsel also asked Holmes about the current value of the home—which Holmes, a licensed

---

[2]     In response to counsel's question regarding the balance at the time of the marriage, Holmes stated: "Probably 590 or—let's see. Not 590. Probably 580. No. Excuse me. It was 576 or somewhere around there. I'm not sure. I don't know." His response regarding the current balance was a bit less confused: "Probably around 545. I'm not sure. 545."

real estate broker, estimated to be $950,000—but she did not ask about the value of the home at the time of the marriage.

After Ramsey rested her case-in-chief, counsel for Holmes immediately stated, "Your Honor, at this time I'll make a motion that [Ramsey] has failed to meet [her] burden according to *Moore-Marsden* . . . . She hasn't provided an expert to figure anything out for the court. She's just gotten an opinion on some of the numbers. So I don't even think I need to bring my—my expert appraiser in at the moment."[3] The court asked Ramsey's counsel to tell it how the court should make the *Moore/Marsden* determination based upon the evidence that was admitted. Counsel cited to the evidence establishing the value of the house and the amount of the mortgage at the time of purchase, the current balance on the mortgage, and the current value of the home (noting there was conflicting evidence of that value). She stated that by her calculations (presumably as set forth in Exh. 18) the community property interest was $109,000, and her client's share was approximately $55,000.

Counsel for Holmes argued that Ramsey had not established any of the amounts needed to make the *Moore/Marsden* determination. He argued that Ramsey had not presented any evidence of what the balance of the mortgage was on the date of the marriage or how much

---

[3]     We note that Ramsey's counsel had attempted to introduce into evidence an exhibit (Exh. 18) that, based upon her description, set forth the *Moore/Marsden* calculation. That exhibit was not admitted into evidence (and therefore is not part of the record on appeal), however, because Ramsey apparently failed to provide it to Holmes's counsel before trial.

7

the principal was reduced, and that she had provided only her own opinion as to the current value of the house, without explaining how she reached that opinion.

After considering the arguments of counsel, the court stated: "All right, then, in the absence—the court finds there to be an absence. What is the solution with respect to the community interest in the family home?" Holmes's counsel responded that because the house clearly was Holmes's separate property, Ramsey had the burden to prove the amount of the community interest. He contended that, since she failed to meet her burden, the court could not make that determination. The court took the matter under submission to be determined at the end of the trial. The court then granted Holmes's counsel's request for a short recess before proceeding to put on his case.

When the trial resumed, Ramsey's counsel asked the court for permission to reopen her case-in-chief. Holmes's counsel objected, saying that he and Ramsey's counsel had engaged in settlement discussions in the hallway during the break, during which he pointed out the deficiencies in Ramsey's case; he argued that Ramsey's counsel was "now going to use that against me." The court granted Ramsey's request, and counsel called Ramsey back to testify. The only topic of her testimony, however, was the value of the house at the time of the marriage; Ramsey testified that the value at that time was $779,000. Ramsey rested.

Holmes did not address any issue regarding the house in his case-in-chief, instead focusing on custody and support issues. When Holmes rested, the court asked Ramsey if she had any rebuttal, and counsel

said she did not. During his closing argument, counsel for Holmes again addressed Ramsey's failure to establish the community property interest in the house saying, "As far as the *Moore-Marsden* is concerned, it's her burden to establish the case, establish the facts in order for the court to make that determination. At this point in time it's from the date of marriage, 4-27-15. We do not know what the value of the house was at that time. We don't know exactly what the mortgage payment was, how much of it went to principal, how much of it went to interest. We don't have expert testimony as to what the current value of the house is. We have her high mark, his low mark. I don't think that that's sufficient information for the court to make a determination, and I would argue that she has not met her burden." He asked that the house be declared Holmes's separate property. The court took the case under submission and subsequently issued a tentative decision.

In the tentative decision, the court computed the community property interest as follows. To determine the amount by which the community property payments reduced the principal on the mortgage, the court used the total amount of mortgage payments (based on the parties' agreement that the payments averaged around $3,200/month) from the date of marriage to the date of separation. The court determined the market value of the house at the time of marriage by calculating the average monthly appreciation from the time of purchase to the time of trial (relying upon Holmes's testimony regarding the current value of the house), and multiplying that monthly appreciation by the number of months between the date of purchase and the date of marriage, and adding that amount to the purchase price. The court

9

then applied the *Moore/Marsden* formula and determined that the community property interest in the home was $426,680.

Holmes filed an objection to the court's determination in the tentative decision. He argued that the court erred by using the total amount of mortgage payments made during the marriage because those payments included principal, interest, real estate taxes, and homeowner's insurance. He contended that, in fact, the amount of principal reduction using community property funds was $36,920, instead of the $288,000 in total mortgage payments the court used in its calculation. With that adjustment, he asserted that the community property interest in the house, using the court's other figures for value and appreciation, was only $45,466.

The court overruled Holmes's objection in a minute order, stating "Respondent cites no authority that permits the Court to even consider his objection, much less consider evidence he could have produced at trial but didn't. The objection, therefore, is overruled." Nevertheless, the court subsequently held a telephonic hearing because it was told it may have made a mathematical error.

At that hearing, Holmes's counsel pointed out that the court used the total amount of mortgage payments made with community funds, and argued that was improper because those payments included taxes, interest, and insurance. The court responded, "What evidence did the court receive at trial as to what those amounts were, i.e., taxes and interest, whatever you're talking about? All the court got was that the average monthly payment on the mortgage was $3200, period. That's all we got." Counsel responded that it was Ramsey's burden to prove

those amounts, so he had decided not to present that evidence at trial on Holmes's behalf. The court stated that "all the court had to go off was the fact that monthly payments of $3200 were made. Period, end of story. Either side could have presented the correct amount. Neither side did. The court went with what it had and that's all there is."

After further colloquy between the court and Holmes's counsel about the correct numbers, the court asked Ramsey's counsel whether she agreed with the numbers. She said, "I agree with the court's calculation, Your Honor. There was no evidence introduced, as the court aptly noted, considering this breakdown, and opposing counsel had the opportunity." The court then ordered judgment entered in accordance with the tentative decision, including its calculation of the community property interest in the house.

Judgment was entered, from which Holmes timely filed a notice of appeal.

## DISCUSSION

Holmes contends on appeal that the family court erred in applying the *Moore/Marsden* formula by using the total amount of the mortgage payments from community funds when calculating the community property percentage share (step two, as described above). He requests that this court either correct that calculation or reverse the judgment and remand with directions to the family court to determine the amount by which community funds reduced the principal on the mortgage and use that amount to apply the *Moore/Marsden* formula.

11

Ramsey contends Holmes forfeited his challenge to the family court's determination by failing to present evidence to establish the amounts of the mortgage payments that went to pay interest, taxes, and insurance. She also argues that even if the issue was not forfeited, the judgment should be affirmed because substantial evidence supports the court's finding that the average mortgage payment during the marriage was $3,200. Holmes responds that he did not forfeit his challenge because it was Ramsey's burden, as the petitioner, to present the evidence necessary for the court to make the determination.

Acknowledging that there is a dearth of authority that might have guided the family court in the evidentiary dilemma it faced, we conclude the family court erred by using the total amount of the mortgage payments when calculating the community property interest in the house, in light of the evidence that a significant portion of those payments went to interest, taxes, and insurance rather than to principal. While we understand that the court was hampered by the parties' failure to introduce evidence establishing exactly what portion of those payments went to reduce the principal on the mortgage, the Supreme Court made clear in *Moore* that the amounts paid for interest, taxes, and insurance cannot be used when determining the community property percentage share. (*Moore, supra,* 28 Cal.3d at pp. 372–373.)

Our determination that the family court erred, however, does not complete our review. The question remains, what should be done? Ramsey takes the position that the judgement should be affirmed regardless of any error because Holmes forfeited his challenge. At trial, Holmes took the position that Ramsey bore the burden of proof to

12

establish the community property interest in the house purchased as Holmes's separate property, and therefore the family court should have declined to award her a share of the community property interest. If Holmes's trial argument were to prevail, the judgment would have to be reversed to the extent it awarded Ramsey any share of the community property interest. On appeal, Holmes takes a less extreme position, arguing that the judgment should either be corrected by this court using evidence he submitted with his objection to the tentative decision, or be reversed and remanded with directions to the family court to determine the correct amount of community funds used to reduce the principal and then to apply the *Moore/Marsden* formula.

We conclude the most appropriate disposition is to reverse the judgment and remand with directions.

First, we decline to find that Holmes forfeited his challenge. Forfeiture is not appropriate here because at trial Holmes clearly pointed to the absence of evidence to establish the community-funded reduction in principal. (C.f. *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1 ["'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method'"].)

Second, while Holmes is correct that, generally, "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting" (Evid. Code, § 500), his decision not to provide the missing evidence in this

13

case was misguided. The material fact at issue in this case was whether there was a community property interest in the house. Holmes conceded this fact. Since it was thus established that a community property interest existed, the family court was obligated to determine the value of that interest and divide it equally. (See Fam. Code, §§ 2550, 2552; *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 880; *In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 86–88.) Both spouses had an equal interest in ensuring that the court had sufficient information with which to fulfill its judicial responsibility. In fact, as the mortgagor, Holmes was in the best position to provide the evidence needed to establish the reduction in principal.

Finally, in light of the court's obligation to determine the value of the community property interest in the house, and its recognition that there was an "absence" of evidence, the court "should have required the parties to furnish [the] additional evidence" it needed to make the determination. (*In re Marriage of Hargrave* (1985) 163 Cal.App.3d 346, 355.) Such a requirement, especially when the information is readily available to one of the parties, is consistent with the Legislature's stated public policy to "favor[] the reduction of the adversarial nature of marital dissolution and the attendant costs." (Fam. Code, § 2100, subd. (b).) Accordingly, we reverse the judgment and remand the matter to the family court so it may do so now.

//

//

14

## DISPOSITION

The judgment is reversed to the extent it determined the community property interest in the family home. The matter is remanded with directions to the family court to hold a limited retrial solely to determine the amount by which community property funds reduced the mortgage principal. At that limited retrial, the family court shall require the parties to produce the necessary evidence and then recalculate the community property interest in the house by applying the *Moore/Marsden* formula.

The parties shall bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**

WILLHITE, Acting P. J.

We concur:

COLLINS, J.

CURREY, J.

15