Filed 7/30/25  Moftakhar v. Moftakhar CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ZAHRA AMIRI MOFTAKHAR, Plaintiff and Respondent, v. SHAHRAM MOFTAKHAR et al., Defendants and Appellants. | G063412 (Super. Ct. No. 30-2015-00766347) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kim R. Hubbard, Judge. Affirmed.

Shahram Moftakhar and Cyrus Moftakhar, in pro. per., for Defendants and Appellants.

Sheppard, Mullin, Richter & Hampton, Golnaz Yazdchi, Valerie E. Alter, Meghan K. McCormick and Chloe G. Chung for Plaintiff and Respondent.

\*          \*          \*

Davoud Moftakhar (decedent) purchased a Laguna Hills condominium (the condo) in 1978 during his first marriage. Title was solely in decedent's name, and it is undisputed he purchased the condo as his separate property. Decedent later divorced his first wife and married plaintiff Zahra Amiri Moftakhar in 1988.[1] After he died intestate in 2011, Zahra and decedent's sons from his first marriage, defendants Shahram and Cyrus Moftakhar (collectively, the sons), disputed whether the condo was decedent's separate property or community property. The probate court found it was separate property but ruled the community had obtained an 85.9 percent pro tanto interest under the *Moore/Marsden* rule.[2] The sons appeal this ruling, arguing the court failed to apply Evidence Code section 662, which states, "The owner of the legal title to property is presumed to be the owner of the full beneficial title."

We find no error. There was no dispute below that decedent held legal title to the condo. Further, the probate court agreed with the sons that it was decedent's separate property. However, it concluded the community had gained an interest in the condo under the *Moore/Marsden* rule because community funds were used to pay the condo's mortgage during decedent and Zahra's marriage. The sons have not shown any legal error in the court's

___

[1] We refer to certain parties by their first names to avoid confusion.

[2] The *Moore/Marsden* rule is derived from *In re Marriage of Moore* (1980) 28 Cal.3d 366 (*Moore*) and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426 (*Marsden*). "Under this rule, 'the community acquires a pro tanto interest' in a party's separate property '[w]hen community property is used to reduce the principal balance of a mortgage on' the property." (*In re Marriage of Alan Freeman* (2025) 110 Cal.App.5th 406, 409.)

analysis, and its findings are sufficiently supported by the record. As such, we affirm the court's order.

FACTS AND PROCEDURAL HISTORY

*A. Background*

The sons are decedent's children from his first marriage, which ended in divorce. It is unclear from the record when decedent divorced his first wife, but the sons contend it occurred in 1988. Decedent also married Zahra in 1988. They had two daughters together and remained married until decedent's death in 2011. The sole dispute in this case concerns the condo, which decedent purchased during his first marriage.[3]

Decedent purchased the condo for $56,000 in 1978, which he financed with a $44,700 loan. He took title to the condo "as his sole and separate property." Likewise, his first wife executed a quitclaim deed in 1978 releasing any interest she had in the condo to decedent. In 1983, decedent took out a second mortgage on the condo in the amount of $22,208 (the second mortgage).

When decedent married Zahra in 1988, the condo was valued at $111,624 and had outstanding mortgages totaling $62,037. Decedent paid off the second mortgage in 1996. Two years later, he refinanced the condo and took out a new mortgage in the amount of $99,000. In 2004, he paid off the

---

[3] The sons' opening brief contains a section titled: "Estate Background," which purports to add more detail about their parents' divorce, the circumstances of decedent's passing, and an alleged holographic will decedent had purportedly written. This section contains no citations to the record, so we have largely ignored it. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [failure to cite record results in waiver of argument].) We also note that the sons did not file a reply brief.

new mortgage but took out a $150,000 home equity line of credit (HELOC), which was secured by the condo.

Decedent died intestate in 2011. The HELOC's balance was $150,384.98 at the time of his death.

B.  *The Probate Case*

Zahra was appointed administrator of decedent's estate in December 2015.[4] In January 2021, she filed a final accounting and petition for final distribution of decedent's estate (the petition). That same month, the condo was valued at $470,000 for purposes of distribution. The HELOC balance was $149,697, leaving a net equity of $320,303.

In the petition, Zahra asserted community funds had been used to pay the condo's mortgages and sought to have the entire condo characterized as community property and distributed to her. The sons objected to this assertion. But they appeared to concede the community had some interest in the condo, as they argued "[t]he condo is *majority* separate property and transmutation has not occurred." (Italics added.)

Following trial on the petition, the probate court found the condo "[was] not 100% community property and not 100% separate property." To determine the community's interest, it set a hearing and ordered Zahra to submit a *Moore/Marsden* analysis. Zahra timely filed an analysis prepared by Natalie McFarlin, a certified public accountant (the McFarlin report). The

_____

[4] The record indicates Shahram filed a petition for probate of will and for letters of administration in January 2015, based on a purported holographic will of decedent. Zahra objected to Shahram's petition and filed a competing petition for letters of administration in May 2015, claiming decedent had died intestate. The probate court denied Shahram's petition on grounds the purported will "did not meet the legal requirements for a holographic will."

McFarlin report presumed that community funds were used to pay the condo's mortgages during decedent and Zahra's marriage. From this presumption, McFarlin determined the community had obtained an 85.9 percent interest in the condo while 14.1 percent remained decedent's separate property. Given the $320,303 in net equity, the McFarlin report concluded the community's interest in the condo was $275,141, while decedent's separate property interest was $45,163.[5]

A hearing on the McFarlin report occurred on February 9, 2023, and both Zahra and the sons examined McFarlin. During this hearing, the sons acknowledged that "we don't dispute the community took an interest at all. We said this during the trial. [¶] Now, the issue at hand for us is to establish the time frame of the community interest." Following McFarlin's testimony, the court continued the hearing to April 27, 2023, so the sons could submit their own *Moore/Marsden* analysis. They were ordered to file a status report prior to the continued hearing identifying the expert witness who would prepare their analysis. They did not have to submit the actual *Moore/Marsden* report at that time.

In early April 2023, the court approved the parties' stipulation to continue the hearing to May 18, 2023. The court's order again required the sons "to file and serve a status report, which is to include the name of their expert witness, at least five court days prior to the continued hearing."

The sons did not file the required status report.

---

[5] It appears that due to rounding, the community and separate interests calculated by McFarlin total $320,304, which is $1 more than the net equity of $320,303.

*C. The Court's Ruling*

At the May 18, 2023 hearing, the sons requested a continuance to allow them more time to find an expert to prepare their *Moore/Marsden* analysis. The court denied their request, noting it had already continued the hearing in April. The court proceeded to hear arguments regarding the *Moore/Marsden* calculation. After the hearing, the court found "[t]he only party to provide a Moore-Marsden [*sic*] analysis was Petitioner, Zahra Moftakhar. That analysis must be accepted by the Court due to the failure of [the sons], to provide any counter Moore-Marsden [*sic*] of their own."

Based on the McFarlin report and intestacy law, the court ruled that Zahra was entitled to the entire community interest in the condo (85.9 percent) and one-third of decedent's separate property interest (4.7 percent), which totaled 90.6 percent. The remaining two-thirds of decedent's separate property interest in the condo was split equally between decedent's four children (the sons and his two daughters with Zahra). As such, each child was awarded one-sixth of decedent's separate property interest, i.e., 2.35 percent each (one-sixth multiplied by 14.1 percent). Based on these percentages, Zahra was granted $290,195.33 of the condo's net equity, while each daughter and son received $7,527.17.

The sons appeal the probate court's ruling that the community has an 85.9 percent interest in the condo.

DISCUSSION

The sons appear to argue that the probate court incorrectly applied the law when calculating the community's interest in the condo. Specifically, they claim the court erroneously applied Family Code section

6

760[6] instead of Evidence Code section 662. We review the court's application of law de novo. (*In re Marriage of Simonis* (2023) 95 Cal.App.5th 1129, 1141–1142.)

Under Evidence Code section 662, "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." Section 760 states, "Except as otherwise provided by statute, all property . . . acquired by a married person during the marriage while domiciled in this state is community property."

The above statutes often clash when a party claims that property acquired during marriage but titled as a spouse's separate property (or as joint tenancy) was intended to be acquired as community property. In such scenarios, parties have disputed whether the property was intended to be acquired as community property per section 760, or whether it is separate property as set forth in its title under Evidence Code section 662. (See, e.g., *Estate of Wall* (2021) 68 Cal.App.5th 168, 169–171 [property purchased during marriage but title was in husband's name alone]; *In re Brace* (2020) 9 Cal.5th 903, 911 [property purchased during marriage with community funds but title was held in joint tenancy].)

Contrary to the sons' assertion, this case does not involve a conflict between section 760 and Evidence Code section 662. Decedent bought the condo before he married Zahra. There is no dispute he acquired it as separate property. Zahra did not argue below that the community obtained an interest in the condo under section 760. Nor have the sons cited any

---

[6] All further undesignated statutory references are to the Family Code.

portion of the record showing the court found the condo to be community property under this statute. Rather, the court agreed with the sons that the condo was decedent's separate property. But it found community funds had been used to pay the condo's mortgages, and, therefore, the community had gained an interest under the *Moore/Marsden* rule.

The court explained this analysis multiple times during the February 9, 2023 hearing. For example, the sons asked McFarlin if she "ha[d] any sources that showed the [condo] became community [property]." Zahra's counsel objected on grounds the sons had misstated McFarlin's testimony: "The expert's opinion is as to what percentage the community acquired an interest in the separate property." The court sustained the objection and explained to the sons, "[the condo is] not community. It did not become community property. The community acquired an interest in [decedent's] separate property."

Later in the hearing, the sons confirmed with McFarlin that Zahra's name was never added to the condo's title. They then asked McFarlin about her understanding of Evidence Code 662. The court interrupted and clarified, "[o]nce again, sir, we are not saying . . . that the separate property title ever changed. It stayed. What we are talking about is the interest the community acquired in that separate property." The sons apparently conceded the point, as they responded, "[a]ll right. So we don't dispute the community took an interest at all. We said this during the trial. [¶] Now, the issue at hand for us is to establish the time frame of the community interest." However, the sons failed to submit any analysis showing what portion of the condo's mortgages were paid with decedent's separate property during his marriage to Zahra.

The sons' opening brief also appears to imply that the probate court improperly used section 760 to presume the funds spent on the condo's mortgages during the marriage were community property. For instance, they contend that Zahra failed to provide any proof of comingled assets or that community funds were used to pay the condo's mortgages. But it is unclear from the record whether the court relied on section 760 for this presumption. Nor have the sons cited any law showing (1) that applying section 760 in this manner would have been erroneous as a matter of law, (2) that the presumption applied by the court was legally incorrect, or (3) that Zahra had the burden of showing community funds were used to pay the condo's mortgages. Thus, we must presume the probate court properly applied the law and that its order is correct. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

The sons also suggest that the *Moore/Marsden* rule should not be applied in probate proceedings because it is difficult for a decedent's heirs to demonstrate whether certain funds are community or separate property. But courts have already applied this rule in probate cases. (See, e.g., *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1421–1429.) Moreover, the sons have not explained what other method could be used to determine the community's interest in separate real property when community funds are applied to its mortgage.

Similarly, the sons contend that "[f]or 80-percent of [decedent's] 22[-]year marriage to Zahra, the condo was a separate property income generating asset for the estate." But they cite no evidence to support this assertion. Rather, they cite a portion of the transcript from the February 9, 2023 hearing in which they are examining McFarlin. While questioning her, the sons claimed that decedent used separate property to pay the condo's

9

mortgages between 2002 to 2006. This is questioning, not evidence. We have not been cited any testimony or documents showing that separate funds were used to pay the condo's mortgages during decedent and Zahra's marriage. Besides, the sons failed to submit a *Moore/Marsden* analysis demonstrating the impact these purported separate funds would have on the community and separate property interests.

Finally, the sons appear to suggest there is insufficient evidence to support the probate court's finding that the community had obtained an 85.9 percent interest in the condo. We disagree. This finding is supported by the McFarlin report, and it was the only evidence presented on this issue. The sons attempt to discredit McFarlin's calculation. As set forth above, they claim some of the condo's mortgages were paid from decedent's separate property during the marriage. But they cite no evidence showing what separate funds were used, the source of those funds, or the total amount of separate funds expended. Thus, the court could reasonably rely on the McFarlin report to support its finding that the community had obtained an 85.9 percent interest in the condo. (See *Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

## DISPOSITION

The probate court's order is affirmed. Zahra is entitled to her costs from this appeal.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.